**Scott Kevin HUFFMAN,**
**Plaintiff-Appellee,**

v.

**James RICKETTS, Director of Arizona Department of Corrections, David Christensen, Superintendent of Arizona Department of Corrections, Rincon Unit, Defendants-Appellants.**

No. 84–1847.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1984.

Decided Dec. 28, 1984.

Stephen M. Weiss, Whitehill, Stolkin, Karp, West, Weiss & Berger, Tucson, Ariz., for plaintiff-appellee.

Greg A. McCarthy, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellants.

Before MERRILL, GOODWIN, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Appellants James Ricketts, Director of the Arizona Department of Corrections, and David Christensen, Superintendent of the Arizona Correctional Training Center, Rincon Unit (hereinafter "Arizona") where appellee Scott Kevin Huffman (hereinafter Huffman) was confined at the time he filed this action for habeas corpus relief, seeks reversal of district court's order which requires that Huffman be resentenced or granted a new trial.

I

Arizona law provides that if a defendant is found to have used a dangerous weapon in a manslaughter offense, he can be found to be guilty of reckless manslaughter with enhanced punishment. In his petition, Huffman requested that the district court enter an order "that the judgment of guilt entered against Petitioner be vacated, made void, and annulled" on due process grounds because the jury at his trial for Reckless Manslaughter was instructed by the Arizona State Court that "driving under the influence of intoxicating liquor is an act inherently dangerous to human life and safety." The district court concluded that this instruction "violated the Fourteenth Amendment's requirement that the state prove every element of a criminal

offense beyond a reasonable doubt." The district court also concluded, however, that the conviction was not subject to reversible error because it could be read as conviction for unenhanced manslaughter as distinguished from reckless manslaughter and so read, was not tainted by the instruction.

## II

Arizona has presented two issues for review:

One. Is Huffman precluded from federal habeas corpus relief because he failed to object to the giving of the challenged instruction as required under Arizona law?

Two. Did the challenged instruction reduce the state's burden of proving that Huffman used a dangerous instrument?

We discuss each contention and the facts pertinent thereto under separate headings.

## III

A. *Applicability of the Contemporaneous Objection Rule*

■ Arizona argues that Huffman is barred from attacking the instruction on federal constitutional grounds because he failed to comply with Rule 21.3(c) of the Arizona Rules of Criminal Procedure.[1] Rule 21.3(c) provides:

> No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Ariz.Rev.Stat.Ann., Rule 21.3(c) (1973).

Arizona also argues that the Supreme Court's decision in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) bars consideration of Huffman's claim by a federal court.

In *Engle v. Isaac,* the Supreme Court noted that "respondents, who failed to comply with an Ohio rule mandating contemporaneous objections to jury instructions, may not challenge the constitutionality of those instructions in a federal habeas proceeding." *Id.* at 110, 102 S.Ct. at 1562. The Court further noted that the Ohio Supreme Court rejected Isaac's challenge to the trial court's burden of proof instructions because he made no objection at trial as required by Ohio law. *Id.* at 115, 102 S.Ct. at 1565.

■ The contemporaneous objection rule does not apply when, notwithstanding procedural default, a higher state court has addressed the merits of a constitutional claim. *Washington v. Watkins,* 655 F.2d 1346, 1368, *reh'g denied,* 662 F.2d 1116 (5th Cir.1981).

In *Washington,* the State argued that the failure of defendant's counsel to object to a jury instruction waived appellate consideration of this issue under Mississippi's contemporaneous objection rule and barred federal habeas corpus relief. The Fifth Circuit rejected this argument with the following analysis:

> The second and more fundamental flaw with the State's [*Wainwright v.] Sykes* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)] argument lies in the fact that the Mississippi Supreme Court expressly addressed the merits of Washington's *Lockett [v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)] claim in his direct appeal, rather than applying a contemporaneous objection rule to bar consideration of the merits. *See* 361 So.2d at 67–68. '[I]f neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim.' *County Court of Ulster County v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213,

---

1. We are required to review *de novo* a determination by the district court that a state prisoner has presented a justifiable federal constitutional question. *See Rose v. Dickson,* 327 F.2d 27, 28 (9th Cir.1964) (Exhaustion of state remedies presents a question of law which a reviewing court must independently determine).

2223, 60 L.Ed.2d 777 (1979) (footnote omitted). Accordingly, the *Sykes* rule is inapplicable to Washington's *Lockett* claim despite his trial counsel's failure to object to the relevant jury instructions. *E.g., Braxton v. Estelle,* 641 F.2d 392, 394 (5th Cir.1981); *Holloway v. McElroy,* 632 F.2d 605, 617 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

*Washington,* 655 F.2d at 1368.

 In his direct appeal to the Arizona Court of Appeals, Huffman argued that the trial court committed "fundamental error" because the instruction "acted to relieve the state of its burden of proof." While it is true that the Arizona Court of Appeals observed that "[n]o objection was made below to the instruction," it proceeded to decide the federal constitutional claim raised by Huffman by holding that "[t]he instruction did not relieve the state of its burden in proving these elements." *State v. Huffman,* 137 Ariz. 300, 670 P.2d 405, 408 (App.1983). By so ruling, the Arizona Court of Appeals failed to invoke the procedural bar contained in Rule 21.3(c).[2] Huffman's failure to make a contemporaneous objection does not bar federal review of this matter.[3]

2. The Arizona Court of Appeals' entire discussion of the *Sandstrom* issue is contained in the following quotation:

> The trial court instructed the jury, inter alia, as follows:
>> "Driving while under the influence of intoxicating liquors is an act inherently dangerous to human life and safety."
> No objection was made below to the instruction but appellant now claims that fundamental error was committed since the instruction acted to relieve the state of its burden of proof. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We do not agree. Appellant was charged and convicted of manslaughter by recklessly causing the death of another person while using a dangerous instrument, to-wit: an automobile. The instruction came from... *State v. Dorame,* 121 Ariz. 108, 588 P.2d 850 (App.1978). This case involved a statute in existence prior to the effective date of our new criminal code, October 1, 1978. It is superfluous, irrelevant, and should not be given. It says that driving while under the influence is inherently dangerous. No one needs to be told that. The

**B.** *Constitutional Propriety of the Instruction*

 Arizona contends that "the challenged instruction did not reduce the state's burden of proving that petitioner used a dangerous instrument." We review this federal constitutional question *de novo. United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.1984) (en banc) (petition for cert. denied, ── U.S. ──, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

The district court did not grant the relief requested in Huffman's petition. Huffman argued that the prosecutor had to convince the jury beyond a reasonable doubt that he was aware of and consciously disregarded a known risk to prove the elements of reckless manslaughter under Arizona law. He asserted that his conviction for reckless manslaughter was obtained in violation of the due process clause of the fifth and fourteenth amendments of the United States Constitution in that the instruction given by the court was the "functional equivalent of a directed verdict" on the issue of intent. *Quoting Connecticut v. Johnson,* 460 U.S. 73, 84, 103 S.Ct. 969, 976, 74 L.Ed.2d 823, 832 (1983). Huffman

state had to prove more than engaging in "dangerous" conduct. It had to prove that the defendant was aware of and disregarded a '... substantial and unjustifiable risk that the result will occur or that the circumstance exists,' and that the risk was '... of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.' A.R.S. § 13-105(5)(c). The instruction did not relieve the state of its burden in proving these elements. There was no fundamental error.
670 P.2d at 408.

3. Arizona asserts that "since the objection of simple error was waived in the state court it may not be raised in this habeas proceeding." This proposition would be at least partially correct only if we conclude that the Arizona Court of Appeals correctly determined that no *Sandstrom* error occurred. Whether an instruction relieves a state prosecutor of his burden of proving the elements of a crime is a federal constitutional question under *Sandstrom* which can be presented to us if that state's courts have considered and rejected the merits of this claim.

claimed that the instruction was "an irrebutable [sic] direction to the jury to find that the culpable mental state of 'recklessly' was involved." Therefore, the instruction violated the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The district court rejected this argument without a discussion of its merits. The court held on this issue: "Petitioner's conviction for manslaughter was not tainted by the erroneous instruction. This conviction appears to be proper."

Huffman has not appealed the district court's determination that the instruction did not violate the fourteenth amendment's requirement that the prosecutor prove every element of the crime of reckless manslaughter beyond a reasonable doubt. In his petition, Huffman also contended that the giving of the instruction was "fundamental" error because it "alleviated the need for the state to prove" that he used or exhibited a dangerous instrument while committing the offense of reckless manslaughter.[4]

The district court concluded that the Arizona court's instruction "may have created a presumption that driving while intoxicated involves the use of a dangerous instrument" in violation of Huffman's right to due process of law. The district court found that "this instruction violated the Fourteenth Amendment's requirement that the state prove every element of a criminal offense beyond a reasonable doubt," but cited no authority for the proposition that a punishment enhancement allegation is an "element of a criminal offense."

In a series of cases beginning with *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court has instructed that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1072. In *Mullaney v.*

*Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court relied on Justice Harlan's concurrence in *Winship* in holding that a state statute which places the burden on the accused to prove he acted in the heat of passion on sudden provocation in order to reduce a murder charge to manslaughter violates due process. *Id.* at 703–704, 95 S.Ct. at 1892. In *Mullaney*, the jury was instructed that malice aforethought was to be conclusively presumed if the evidence established that the homicide was intentional or unlawful, unless the "defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.* at 686, 95 S.Ct. at 1883. The Court rejected the argument that *Winship* should be limited to those facts which are necessary to constitute a homicide and "which, if not proved, would wholly exonerate the defendant." *Id.* at 697–99, 95 S.Ct. at 1888–89.

The state in *Mullaney* also argued that the facts at issue in *Winship* were necessary to prove the existence of a crime, while in a homicide, the presence of malice "does not come into play until the jury already has determined that the defendant is guilty and may be punished for at least manslaughter." *Mullaney*, 421 U.S. at 697, 95 S.Ct. at 1888. The Court commented in this respect:

> Moreover, if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment. An extreme example of this approach can be fashioned from the law challenged in this case. Maine divides the single generic offense of felonious homicide into three distinct punishment categories—murder,

---

**4.** Arizona law provides that a person who has been convicted of reckless manslaughter shall suffer an enhanced punishment if he also used or exhibited a deadly weapon or dangerous instrument during the commission of the crime. Ariz.Rev.Stat.Ann. § 13–604 G (1978).

voluntary manslaughter, and involuntary manslaughter. Only the first two of these categories require that the homicidal act either be intentional or the result of criminally reckless conduct.... But under Maine law these facts of intent are not general elements of the crime of felonious homicide.... Instead, they bear only the appropriate punishment category. Thus, if petitioners' argument were accepted, Maine could impose a life sentence for any felonious homicide—even one that traditionally might be considered involuntary manslaughter—unless the *defendant* was able to prove that his act was neither intentional nor criminally reckless. *Id.* at 698–99, 95 S.Ct. at 1889 (citations omitted) (emphasis in original).

We have not found any case applying *Winship* to a punishment enhancement allegation. The above quoted dictum from *Mullaney* concerning the possible application of *Winship* to "factors that bear solely on the extent of punishment" strongly suggests that the Supreme Court would probably require the prosecution to prove each fact in a punishment enhancement allegation beyond a reasonable doubt because the length of time that the accused will be deprived of his liberty is at stake. We need not decide that issue here, however, because it is our view that the court's instruction did not reduce the state's burden of proving that the accused used a dangerous instrument which was the predicate for enhancement.

The Arizona trial court made no specific reference to the enhancement allegation in its instructions on the law. The term "dangerous instrument" was defined as follows: "Dangerous instrument means anything used under the circumstances in which it was used, attempted to be used, or threatened to be used, if readily capable of causing death or serious physical injury."

After reading all the instructions, the court read the verdicts to the jury. Its only reference to the enhancement allegation is contained in the following quotation from the record:

Now, only if you determine that the Defendant is guilty of this charge do you answer the interrogatory that appears below that, and it reads: "We the jury, do further find that the crime of manslaughter involved the use of a dangerous instrument, to wit: An automobile." And below that, then, is a line for an indication of true or not true.

The court then gave the following instructions concerning reckless manslaughter:

A person commits manslaughter by recklessly causing the death of another person. Recklessly causing the death of another person means that a person is aware of, and consciously disregards a substantial risk, that his conduct will result in the death of another person. The risk must be such that disregarding it is a gross deviation from what a reasonable person would do in the situation.

It is no defense that a person who creates such a risk is unaware of it if the reason he is unaware of it is solely because of voluntary intoxication.

The crime of manslaughter includes the less serious crime of negligent homicide. The State may prove negligent homicide, but fail to prove the more serious crime of manslaughter. You are permitted to find the Defendant guilty of the less serious crime of negligent homicide, if the evidence does not show beyond a reasonable doubt that the Defendant is guilty of manslaughter, and if the evidence does show beyond a reasonable doubt that the Defendant is guilty of negligent homicide.

The distinction between manslaughter and negligent homicide is that for manslaughter, the Defendant must have consciously disregarded a substantial risk that his conduct would cause death, while negligent homicide only requires that the Defendant fail to recognize the risk.

Huffman had a blood-alcohol reading of .29%. The jury was instructed concerning evidence of alcohol in the blood as follows:

If you determine that there was a .10 percent or more by weight of alcohol in the Defendant's blood at the time of alleged offense, it should be presumed that the Defendant was under the influence of intoxicating liquor, unless you find from all of the evidence that the Defendant was not under the influence of intoxicating liquor.

The district court concluded that by instructing the jury that driving under the influence of intoxicating liquor is an act inherently dangerous to human life and safety and that a person with a blood-alcohol reading of .10% or higher is presumed to be under the influence of intoxicating liquor, the Arizona court "may have created a presumption that driving while intoxicated involves the use of a dangerous instrument."

In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the state trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 515, 99 S.Ct. at 2454. Sandstrom was charged with "deliberate homicide." *Id.* at 512, 99 S.Ct. at 2453. "Deliberate homicide" requires proof that the killing was done "purposely or knowingly." Mont.Code Ann. § 45–5–102(a) (1978). *See id.,* n. 1. The Supreme Court held that the instruction created a mandatory presumption which "required the jury, if satisfied as to the facts which trigger the presumption, to find intent *unless* the defendant offered evidence to the contrary." *Id.* at 515, 99 S.Ct. at 2454 (emphasis in the original). The Court stated that given the "common definition" of "presumes," a rational juror could have interpreted the instruction as an irrebuttable direction to find intent upon proof of voluntary action, "unless the *defendant* proved the contrary." *Id.* at 517, 99 S.Ct. at 2455 (emphasis in the original). The *Sandstrom* Court held that a presumption which relieves the state from its burden of proving every fact necessary to constitute the crime charged, or which shifts the burden of persuasion to the defendant, violates due process. *Id.* at 521–24, 99 S.Ct. at 2457–59.

The *Sandstrom* Court noted that a reviewing court must accord "careful attention to the words actually spoken to the jury" in determining whether an impermissible presumption has been described. *Id.* at 514, 99 S.Ct. at 2454. The state court, in the matter before us, did *not* instruct the jury that the law *presumes* that a person who drives a motor vehicle is using a dangerous instrument. The only instruction concerning the punishment enhancement allegation given by the Arizona State Court defined the term "dangerous instrument." Contrary to the fact situation in *Sandstrom,* the jury was not told, directly or indirectly, that Huffman was required to produce evidence that he did not use a dangerous instrument or that he had the burden of persuading the jury that he did not do so.

In addition to *Sandstrom* and *In re Winship,* Huffman has referred this court to *Ulster County Court v. Allen, supra, Connecticut v. Johnson, supra,* and this court's decision in *Petition of Hamilton,* 721 F.2d 1189 (9th Cir.1983). None of these cases support Huffman's position that the state court's instructions contained a constitutionally impermissible presumption.

In *Ulster County Court v. Allen, supra,* the jury was told that:

> the presence in an automobile of any machine gun or of any handgun is *presumptive evidence* of their unlawful possession. In other words, these *presumptions,* or this latter presumption upon proof of the presence of the machine gun and the hand weapons, you may infer and draw a conclusion that such weapon was possessed by each of the defendants who occupied the automobile at the time when such instruments were found. *Id.* at 161, n. 19, 99 S.Ct. at 2226, n. 19 (emphasis added).

The Supreme Court concluded that the permissive presumption of possession was "entirely rational" and constitutional as applied to the facts of that case. *Id.* at 163, 99 S.Ct. at 2227.

In *Ulster County Court,* the Court also discussed the distinction between permissive and mandatory presumptions. The Court states that a mandatory presumption "tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *Id.* at 157, 99 S.Ct. at 2224 (emphasis in the original).

■ Where the trial court has given an instruction which contains a mandatory presumption, a reviewing court must examine the presumption on its face "to determine the extent to which the basic and elemental facts coincide." *Id.* at 157–158, 99 S.Ct. at 2224–2226. A mandatory presumption does not violate due process where there is a "rational connection between the facts proved and the fact presumed." *United States v. Hester,* 719 F.2d 1041, 1044 (9th Cir.1983).

The Supreme Court also made the following comments in *Ulster County Court:*

[T]o the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases.

*Ulster County Court v. Allen, supra,* at 159, 99 S.Ct. at 2226.

■ In the case of a mandatory presumption, "which the jury must accept even if it is the sole evidence of an element of the offense," *Id.* at 166, 99 S.Ct. at 2229, the prosecution "may not rest its case on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Id.* at 167, 99 S.Ct. at 2225.

■ Even if we assume that the court's instruction in the instant matter could be construed by a rational jury as a mandatory presumption that an automobile driven by a driver who is under the influence of intoxicating liquor is being used as a dangerous instrument, it is clear to us that such a presumption is accurate in the "run of cases." Further, it is equally apparent that a jury could find beyond a reasonable doubt that a person who has "blotted" some acid, smoked hashish, and consumed sufficient intoxicants to have a blood-alcohol level of .29, and has driven through a signal at a speed of 40 miles per hour, is using an automobile as a dangerous instrument. We construe the instruction as a superfluous observation of the trial court judge on an obvious fact known to any rational adult, i.e., that driving while under the influence is inherently dangerous to human life. Because of its relative size and weight, any moving vehicle is inherently dangerous to the life and safety of any person in its path regardless of the sobriety of its driver.

When considered as a whole, the court's instructions properly informed the jury that the prosecutor bore the burden of proving beyond a reasonable doubt that Huffman *used* his automobile as a dangerous instrument during the commission of the charged offense. The court's comment did not lessen this burden. The verdict form relating to the enhancement allegation gave the jury a choice of finding whether such allegation was "true or not true." As explained above, the court read this verdict to the jury and expressly advised them of this choice.

The jury was also admonished that it should not be "concerned by any opinion you may feel I have about the facts. You are the sole judges of the facts." The jury was also told not to single out any instruction and disregard the others. It was also advised that after determining the facts, "you may find out that some instructions do not apply." These instructions, taken as a whole did not shift the burden of proof or persuasion concerning the truth of the enhancement allegation to Huffman. *See United States v. Wolters,* 656 F.2d 523, 525–26 (9th Cir.1981).

The judgment is REVERSED.