954 P.2d 1058

Brett William LIND, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Norman D. Hall, Jr., and City of Tempe Municipal Court, the Honorable Michelle O'Hair-Schattenberg, judges thereof, Respondent Judges,

STATE of Arizona, Real Party in Interest.

No. 1 CA–SA 97–0318.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 27, 1998.

Review Denied April 21, 1998.*

* McGregor, J., recused herself and did not participate in the determination of this matter.

234

Richard R. Brennan, Scottsdale, for Petitioner.

Andrew M. Davidson, Assistant City Prosecutor, Tempe, for Real Party in Interest.

GRANT, Judge.

¶ 1   Brett William Lind ("Defendant") has filed this Petition for Special Action from the denial of his Motion to Suppress the use of a portion of a blood sample taken by a hospital following Defendant's car accident, but prior to Defendant's arrest or the establishment of probable cause.  This special action challenges the constitutionality of Arizona Revised Statutes Annotated ("A.R.S.") section 28–692(J) (Supp.1996).  For reasons that follow, we accept jurisdiction over the special action, uphold the constitutionality of the statute as applied to Defendant, and deny relief.

## FACTS AND PROCEDURAL HISTORY

¶ 2   Defendant was involved in a one-vehicle accident in Tempe, Arizona.  An ambulance took Defendant to Scottsdale Memorial Hospital where he was admitted as a "Trauma 1" case.[1]  Pursuant to established hospi-

---

**1.** The record does not reveal the medical condition of Defendant or the meaning of the term,   "Trauma 1."

tal protocol, the hospital drew a total of nine vials of blood from Defendant—two of which were later turned over to law enforcement.

¶ 3   Scottsdale Memorial Hospital has an established procedure whereby it may draw blood for medical reasons initially and later release a portion of that blood to law enforcement officers.   To obtain a portion of the blood, however, hospital policy and procedure demand that an officer make a request for the blood and certify that probable cause exists to believe the patient has violated the drunk-driving law; the officer must fill out a form entitled "Blood or Bodily Fluid Sample Request by Law Enforcement Officer."   This request form states in pertinent part, "That if a blood sample is or has been taken from the above-named patient for any reason, a portion of that sample be provided to me for law enforcement purposes."

¶ 4   When drawing blood for medical purposes, pursuant to a physician's order, an attending medical professional at the hospital has discretion to draw extra blood for law enforcement.   In such a case, the medical professional draws two 7ml grey-topped vials of blood, fills out a chain of custody form, and puts the vials in a locked refrigerator.   Law enforcement officers may not obtain these vials unless they follow the protocol described above for requesting the blood.   No additional invasion of the patient/defendant occurs.

¶ 5   On the night of Defendant's arrest, both Scottsdale Memorial Hospital and the police complied with these procedures.   At approximately 11:20 p.m., hospital staff withdrew blood from Defendant for medical purposes.   A total of nine vials of blood were drawn, and two of these were grey-topped 7ml vials drawn pursuant to the hospital's discretion to take extra blood for a legal sample when performing a blood test for medical purposes.

¶ 6   At approximately 11:30 p.m., an officer arrived at the hospital and placed Defendant under arrest.   A little after midnight, the officer completed the request form, indicating he had probable cause to suspect Defendant of DUI, and requesting a portion of the blood sample drawn for medical purposes.   Upon this request, the hospital transferred custody of the two grey-topped vials to the officer.

¶ 7   During criminal proceedings in the Tempe Municipal Court ("city court"), Defendant filed a Motion to Suppress the results of the blood test performed on the blood in the grey-topped vials.   After a hearing, the city court denied Defendant's Motion, explaining:

It is undisputed that [the officer] did not request that blood be drawn for law enforcement purposes and that it was drawn prior to his arrival at the hospital.   He apparently made the requisite showing of probable cause to receive the sample that was subsequently analyzed.   It is, therefore, the conclusion of the Court that the blood samples were lawfully taken for medical purposes and that [the officer] lawfully obtained a portion of portion of [sic] the sample pursuant to A.R.S. 28–692J [sic].

Defendant then filed a Complaint for Special Action in the Superior Court of Maricopa County ("trial court").   The trial court denied relief, explaining that the statute permits blood to be drawn "for any reason," including "medical reasons, as in this case."   The trial court found the blood was not drawn at the request of the officer, but for medical reasons pursuant to hospital policy.

¶ 8   From the trial court's order, Defendant seeks special action relief pursuant to Arizona Rule of Procedure for Special Action 4(a).

### ISSUE

¶ 9   We accept jurisdiction in order to address the following issue of statutory interpretation:

Does a hospital blood sample fall within the statutory language of blood drawn "for any reason," when the hospital draws the blood: (a) prior to defendant's arrest; (b) prior to a demonstration of probable cause; and (c) in an amount in excess of what is necessary for medical purposes, so that a portion of the blood may be given to law enforcement officers if necessary?

### DISCUSSION

¶ 10   A petition for special action is not ordinarily an appropriate method of

obtaining relief from the denial of a motion to suppress because the remedy by direct appeal is generally adequate. *See* Ariz. R. Spec. Act. 1(a). This special action, however, concerns an issue of first impression that turns on a question of law, justifying our acceptance of jurisdiction. *Moss v. Superior Ct.,* 175 Ariz. 348, 350, 857 P.2d 400, 402 (App.1993) (citing *Vo v. Superior Ct.,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992)). Furthermore, this case presents an issue of statewide importance affecting numerous cases. *Id.* (citing *State v. Velasco,* 165 Ariz. 480, 482, 799 P.2d 821, 823 (1990)). Therefore, we accept jurisdiction.

¶ 11 Defendant raises the issue of the statutory interpretation of A.R.S. section 28–692(J) (1996). That statute provides:

> Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated this section and a sample of blood, urine or any other bodily substance is taken from that person *for any reason* [,] a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes. A person who fails to comply with this subsection is guilty of a class 1 misdemeanor.

(Emphasis added.) Defendant disputes the meaning of the phrase, "for any reason," claiming that the blood sample in the instant case was not drawn for medical purposes and thus constitutes an involuntary search or seizure, in violation of *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and an unconstitutional deprivation of due process under the Arizona Constitution.

■ ¶ 12 Defendant's claim raises an issue of statutory interpretation, and statutory interpretation is a question of law. *Barry v. Alberty,* 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992). We review questions of law *de novo. Special Fund Div. v. Industrial Comm'n,* 184 Ariz. 363, 365, 909 P.2d 430, 432 (App.1995).

■ ¶ 13 Under Arizona case law and statute, there are two instances when taking

a blood sample is clearly permissible for law enforcement purposes. *State v. Brita,* 154 Ariz. 517, 517–18, 744 P.2d 429, 429–30 (App. 1987), *aff'd in part and vacated in part,* 158 Ariz. 121, 761 P.2d 1025 (1988). The first is after arrest of a suspect, when the sample is given with consent in a medical facility pursuant to A.R.S. section 28–691 (the implied consent law). *Id.* The second is when a blood sample has been drawn from a suspect in a medical facility for medical purposes, and a law enforcement officer requests a portion of that sample for testing pursuant to A.R.S. section 28–692(J); an arrest is not required prior to this. *Id.* Because Defendant was not yet under arrest when the blood was drawn, the latter situation concerns us here.

¶ 14 The Arizona Supreme Court has examined police use of a blood sample obtained pursuant to statute, for medical purposes, in *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336 (1985). The court defined the statutory phrase "for any reason" as meaning "for medical purposes." [2] The court held that the warrantless removal of blood from a person suspected of DUI is permissible under A.R.S. section 28–692(M) (now A.R.S. section 28–692(J)) where the following criteria exist: (1) probable cause exists to believe the person has been driving under the influence; (2) exigent circumstances are present; and (3) the blood is drawn for medical purposes by medical personnel. *Id.* at 284, 709 P.2d at 1345. Further, the court restricted the statutory language, "taken from that person for any reason" to mean "that the blood must be drawn by medical personnel for any medical reason so as not to conflict with the orderly administration of care to those injured." *Id.*

■ ¶ 15 The instant case differs from *Cocio.* In that case, the officer was present when the blood was drawn pursuant to a doctor's order, and the officer asked for a portion of the blood. The officer there already had probable cause at the time the blood was drawn,[3] and the medical personnel did not withdraw more blood than was neces-

---

**2.** Earlier case law had held that the phrase "for any reason" meant "for any reason other than for law enforcement purposes." *State v. City Court of City of Tucson,* 138 Ariz. 244, 246, 673 P.2d 988, 990 (App.1983). The court held that police could use a portion of a blood sample

where the State could show that "the blood sample would have been taken anyway." *Id.*

**3.** *Cocio* does not reveal whether the defendant was already under arrest when police took him to the hospital. Therefore, we cannot know

sary for medical purposes. In the case before us, two distinguishing factors are present: (1) the hospital personnel withdrew the blood before any police arrived on the scene and before any allegation of probable cause was made; and (2) the hospital deliberately withdrew an amount of blood in excess of that needed for medical purposes—setting the extra blood aside as a possible legal sample.

¶ 16 Defendant claims the extra blood was not drawn "for medical purposes" within the meaning of the statute. Therefore, Defendant argues, the use of the blood sample for law-enforcement purposes is impermissible under the statute and violative of Defendant's due process rights.

¶ 17 Does a hospital blood sample fall within the statutory meaning of "for any reason" when the blood is drawn prior to a showing of probable cause or an arrest, the amount of the blood drawn is in excess of what is necessary for medical purposes at the time, and the extra blood is set aside for possible law-enforcement use? We hold that such a blood sample does fall within the statutory meaning of A.R.S. section 28–692(J) ("for any reason") and may be given upon request to a law enforcement officer, in possession of probable cause that a defendant drove under the influence. We hold that the hospital draws the entire sample "for medical purposes" within the meaning of the statute, and the officer's subsequent statutory request for a portion of the sample does not violate any rights of a defendant.

¶ 18 Indeed, we note that any other interpretation of the statute would run counter to common sense and sound medical practice. The statutory language requires medical personnel to provide a law-enforcement officer with a portion of a blood sample "sufficient for analysis." Unless medical personnel withdrew more blood than necessary for their own medical testing, they would be unable to provide a sufficient blood sample to police while retaining enough for their own purposes. Thus, medical personnel would

whether this is an additional distinguishing fac-

face a dilemma: either take a second blood sample for their own purposes, or fail to comply with the statute and face prosecution for a class 1 misdemeanor. Neither of these options is a sensible interpretation of the statute, or of the case law interpreting "medical purposes." The minimal intrusion by law enforcement from "merely [ ] sampling off of an additional portion of the defendant's blood" seems preferable to a second needle puncture occasioned by a law enforcement officer's request for a portion of the first sample. *See Cocio,* 147 Ariz. at 286–87, 709 P.2d at 1345–46.

¶ 19 Furthermore, we find additional support for our conclusion in the fact that a hospital retains custody and control of all blood drawn unless and until the police requisition a portion of it. This indicates that all the blood is "for medical purposes" unless a portion of it is demanded for law-enforcement purposes. Only when the police request and receive the blood sample does it take on a legal, rather than medical, purpose; at the time the sample is taken, its purpose is solely medical.

¶ 20 As a final matter, Defendant asks us to revisit the supreme court's holding in *Cocio* that a blood sample presents an exigent circumstance due to the "highly evanescent nature of alcohol" in a defendant's bloodstream. 147 Ariz. at 284, 709 P.2d at 1345. Because we are bound by our supreme court's determinations, we decline to address this argument.

## CONCLUSION

¶ 21 For reasons discussed above, we affirm the trial court's denial of Defendant's Motion to Suppress the blood sample evidence and deny relief.

WEISBERG and McGREGOR, JJ., concur.