IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

DANIEL ALBERTO REYES,
*Appellant*.

No. 2 CA-CR 2014-0238
Filed December 24, 2015

---

Appeal from the Superior Court in Pima County
No. CR20121582001
The Honorable Richard S. Fields, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Terry M. Crist, III, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Katherine A. Estavillo, Assistant Public Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Chief Judge Eckerstrom concurred.

---

M I L L E R, Judge:

¶1        Daniel Reyes was convicted after a jury trial of multiple counts of aggravated driving under the influence of an intoxicant (DUI), criminal damage, and fleeing a law enforcement vehicle.  He was sentenced to concurrent and consecutive terms totaling eighteen years' imprisonment.  On appeal, he argues the results of alcohol testing of blood drawn while he was receiving medical treatment should have been suppressed because there were no exigent circumstances justifying the warrantless blood draw, and the officer could not rely in good faith on binding precedent in seeking the blood draw.  For the following reasons, we affirm.

**Facts From Suppression Hearing**

¶2        In reviewing a motion to suppress, we consider only the evidence presented at the suppression hearing, viewing it in the light most favorable to sustaining the trial court's ruling.  *State v. Gonzalez*, 235 Ariz. 212, ¶ 2, 330 P.3d 969, 970 (App. 2014).  In April 2012, Tucson Police officer Marquis responded to a call that a car had fled from an officer and crashed into a building.  The driver, Reyes, was taken to the hospital for treatment of non-life-threatening injuries.  Marquis met Reyes at the hospital and observed that he had watery, bloodshot eyes, a flushed face, slurred speech, and the odor of alcohol on his breath.  Marquis also attempted to perform a horizontal gaze nystagmus test on him, but Reyes stopped before it was completed.  Reyes also declined the officer's request to submit to a preliminary breath test.

**¶3**        Marquis advised Reyes of his rights pursuant to *Miranda*[1], informed him he was under arrest, and read the "Admin Per Se"[2] admonition.  Reyes then asked to speak to his attorney, and he did so shortly thereafter.  Marquis again asked Reyes to consent to the blood draw, but Reyes declined.  The hospital nurses, however, subsequently drew blood for medical purposes.  Marquis provided a nurse two vials to obtain a portion of the medical draw.  At the suppression hearing, Marquis testified he did not seek a telephonic search warrant because he knew he could obtain a sample from the medical draw, but acknowledged there was sufficient time to have requested a warrant.

**¶4**        The trial court denied the motion to suppress and at trial the court admitted the results of the blood analysis, which showed a blood alcohol content of .195.  We have jurisdiction pursuant to A.R.S. § 13-4033(A).

### Exigent Circumstances and Good Faith Reliance on *Cocio*

**¶5**        The single issue raised on appeal is whether the trial court properly denied the motion to suppress when it concluded Officer Marquis relied in good faith on binding Arizona precedent that held the dissipation of alcohol in blood alone satisfied the "exigent circumstances" element of Arizona's statutory medical blood draw exception to the warrant requirement.  We generally review the denial of a motion to suppress for an abuse of discretion, but review constitutional questions de novo.  *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007).

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]An "Admin Per Se" warning, or implied consent admonition, generally warns a driver that his or her license will be suspended if he or she refuses to submit to a test of the alcohol content of his  or her blood, breath, or other bodily substance.  *See, e.g.*, *State v. Butler*, 232 Ariz. 84, ¶ 4, 302 P.3d 609, 611 (2013); *see also* A.R.S. § 28-1321 (regarding implied consent).

¶6          A blood draw is a search under the Fourth Amendment to the United States constitution, *see Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013); therefore, to comply with the Fourth Amendment, law enforcement officers must first obtain a warrant or consent, or there must be an exception to the warrant requirement, *see State v. Nissley*, No. 1 CA-CR 12-0780, ¶¶ 20-23, 2015 WL 6153913 (Ariz. Ct. App. Oct. 20, 2015).  Blood obtained pursuant to A.R.S. § 28-1388(E) is such an exception.

¶7          Section 28-1388(E) provides that when blood is collected for any reason, a portion must be provided upon request to a law enforcement officer who has probable cause to believe the person has violated the DUI statute.  *Nissley*, 2015 WL 6153913, ¶ 23.  In *State v. Cocio*, 147 Ariz. 277, 283-84, 709 P.2d 1336, 1344-45 (1985), our supreme court considered whether the predecessor statute to § 28-1388 violated the constitution.  To comply with existing constitutional case law, the court enumerated three requirements before a law enforcement officer may obtain a sample pursuant to this exception:  (1) the officer must have probable cause to believe the person has violated the DUI statutes, (2) exigent circumstances must exist, and (3) the blood must be drawn "for medical purposes by medical personnel."  *Id.* at 284, 709 P.2d at 1345.

¶8          Because Reyes refused to consent to a blood draw for law enforcement purposes, and Marquis did not seek a warrant, the only issue was whether the state demonstrated compliance with the three requirements authorizing the medical blood draw exception. At the suppression hearing, Reyes conceded the blood was drawn for medical purposes and that the officer had probable cause to believe he was driving under the influence of alcohol; therefore, the only remaining issue was whether exigent circumstances were present.  *Id.*  Relying in part on *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1556, in which the Supreme Court held that the dissipation of alcohol was not a "*per se* exigency" justifying an exception to the warrant requirement, Reyes contended that the officer's acknowledgment that there was sufficient time to seek a warrant vitiated the state's argument that the dissipation of alcohol constituted the exigency.

4

¶9        The trial court agreed with the state that exigent circumstances existed because as time passed, the alcohol in Reyes's blood stream dissipated.  The court also noted, however, that it would have suppressed the evidence had the blood draw occurred after April 2013, when *McNeely* was issued.  *Id.*  It finally noted that the officer relied on Arizona precedent "in good faith."

¶10        On appeal, the state argues that the officer relied in good faith on Arizona precedent that held the dissipation of alcohol in the blood was an exigent circumstance.  It does not argue that Arizona's statutory medical exception cases are still valid or that the blood draw would otherwise have been proper even had it occurred post-*McNeely*.  But we need not address these issues because, as explained below, we agree with the state that the officer relied in good faith on binding precedent at the time of the blood draw.

¶11        Absent a warrant or consent, or if the necessary requirements to an exception are not met, a court generally applies the exclusionary rule to bar the admission of evidence obtained in violation of the constitution.  *See Davis v. United States*, ___ U.S. ___, ___, 131 S. Ct. 2419, 2426 (2011).  The exclusionary rule, however, is subject to exceptions.  *Id.* at ___, 131 S. Ct. at 2429.  At issue here is the good-faith exception that allows admission of evidence "obtained during a search conducted in reasonable reliance on binding precedent." *Id.*

¶12        To determine whether the good-faith exception applies, "courts generally agree that the authority must be binding in the jurisdiction where the police conduct occurred."  *State v. Mitchell*, 234 Ariz. 410, ¶ 28, 323 P.3d 69, 77 (App. 2014).  Tucson Police are bound by precedent set by the Arizona appellate courts and the United States Supreme Court.  *See id.* ¶ 31.  We therefore review the applicable precedent at the time of Reyes's blood draw.

¶13        In 1966, the United States Supreme Court considered whether a warrantless blood draw performed by a physician at the direction of a police officer while a driver under arrest for DUI was in the hospital receiving treatment violated the constitution.  *Schmerber v. California*, 384 U.S. 757, 758-59 (1966).   The court

concluded the officer "might reasonably have believed that he was confronted with an emergency," and could not wait for a warrant, due to the fact that blood alcohol diminishes after drinking stops. *Id.* at 770. The court held that the driver's Fourth Amendment rights were not violated. *Id.* at 772.

¶14        Nearly twenty years later, the Arizona Supreme Court relied on *Schmerber* to uphold the warrantless blood draw of a DUI suspect receiving medical treatment. *Cocio*, 147 Ariz. at 283-85, 709 P.2d at 1344-46. In *Cocio*, after determining that exigent circumstances must be present in order to apply Arizona's statutory medical blood draw exception, the court held that exigent circumstances existed because "[t]he highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time." *Id.* at 284, 709 P.2d at 1345.

¶15        Based on the holding in *Cocio*, this court has repeatedly refused to revisit arguments that exigent circumstances other than the dissipation of alcohol in blood were necessary to meet the requirements of the medical blood draw exception. *See State v. Aleman*, 210 Ariz. 232, ¶ 14, 109 P.3d 571, 576 (App. 2005) (noting "pertinent Arizona cases clearly refute" argument that there were no exigent circumstances justifying medical blood draw); *Lind v. Superior Court*, 191 Ariz. 233, ¶ 20, 954 P.2d 1058, 1062 (App. 1998) (declining invitation to address *Cocio* because court of appeals is "bound by our supreme court's determinations"); *State v. Howard*, 163 Ariz. 47, 50, 785 P.2d 1235, 1238 (App. 1989) (finding exigent circumstances argument failed due to *Cocio*).

¶16        Reyes argues that despite those cases, the law was "unsettled" and there was no binding precedent upon which Officer Marquis could find exigent circumstances. He relies on *Mitchell*, a case in which this court declined to apply the *Davis* exception because the case law was unsettled. 234 Ariz. 410, ¶ 31, 323 P.3d at 78. *Mitchell*, however, is distinguishable. The state supreme court precedent regarding medical blood draws had been well-developed over two decades. In contrast, *Mitchell* involved the placement of a GPS tracking device on the defendant's vehicle, for which there was

no Arizona or controlling federal authority. *Id.* ¶ 31. The state relied instead on a distinguishable case from the Ninth Circuit Court of Appeals and Arizona cases the court determined were not sufficiently apposite because they did not address GPS technology. *Id.* ¶¶ 28-32. The lack of settled case law in *Mitchell* is not present here.

**¶17**    Reyes also argues there has been a "shift[] away from" *Cocio*, relying on *State v. Flannigan*, 194 Ariz. 150, 978 P.2d 127 (App. 1998). There, the defendant drove his truck through a red light and struck a car, causing the death of the driver and injuring the passengers. *Id.* ¶ 2. Flannigan was suspected of being under the influence of a central nervous system stimulant because his physiological measures were elevated and he displayed nervous tendencies. *Id.* ¶¶ 3-6. He was transported to the police station where a drug recognition expert performed various tests. *Id.* ¶ 5. Because of a police department policy that regarded a manslaughter investigation as sufficient to constitute an exigency, a phlebotomist at the police station drew the defendant's blood without a search warrant or express consent. *Id.* ¶¶ 6, 9, 16. The state relied on *Schmerber* to argue exigent circumstances were present because the officer believed Flannigan was under the influence of drugs, and those drugs were dissipating in his blood. *See id.* ¶¶ 9-11. In holding the state did not meet its burden of showing exigent circumstances, the court concluded that *Schmerber* required both the dissipation of alcohol in the defendant's system and a lack of time to seek out a warrant before the circumstances would be deemed exigent. *Id.* ¶¶ 20, 25.

**¶18**    *Flannigan* did not signal a shift away from *Cocio*. Indeed, the court specifically noted, citing *Lind*, that "because [Flannigan] did not sustain any injuries in the accident that required medical personnel to draw his blood, this case does not involve the medical purposes exception of A.R.S. section 28-692(J), which would have entitled the police to receive a sample of his blood regardless of

his consent."[3] *Flannigan*, 194 Ariz. 150, ¶ 14, 978 P.2d at 130. The court specifically distinguished its holding from cases involving the medical blood draw exception, indicating that dissipation of alcohol in blood still served as an exigent circumstance in such cases. *Id.* Moreover, the court's principal holding was based on the "officers' rote application of the department's untenable policy that exigent circumstances always exist in vehicular manslaughter and aggravated assault cases." *Id.* ¶ 25. *Flannigan* did not vitiate *Cocio,* nor could it. *See Lind*, 191 Ariz. 233, ¶ 20, 954 P.2d at 1062 (declining to "revisit" *Cocio* "[b]ecause we are bound by our supreme court's determinations").

**¶19** As of 2012, when Reyes's blood was drawn, Arizona courts had uniformly held that dissipation of alcohol in blood was in itself a sufficient exigent circumstance for purposes of the medical exception. *Cocio*, 147 Ariz. at 284, 709 P.2d at 1345; *Aleman*, 210 Ariz. 232, ¶ 14, 109 P.3d at 576; *Lind*, 191 Ariz. 233, ¶ 20, 954 P.2d at 1062; *Howard*, 163 Ariz. at 50, 785 P.2d at 1238. Therefore, it was reasonable for officer Marquis to rely on the evanescent nature of alcohol in Reyes's blood in requesting the blood sample with no warrant. *See Davis*, ___ U.S. at ___, 131 S. Ct. at 2429. The trial court did not err in denying Reyes's motion to suppress.

## Disposition

**¶20** For the foregoing reasons, Reyes's convictions and sentences are affirmed.

---

[3] A.R.S. § 28-692(J) was the predecessor statute to today's medical blood draw exception, § 28-1388(E). *Compare* § 28-1388(E), *with* 1996 Ariz. Sess. Laws, ch. 161, § 8.