PELANDER, V.C.J.,
joined by BRUTINEL, J., concurring in part and dissenting in part.
¶ 38 For almost fifty years, Arizona’s “implied consent” law has specifically and expressly allowed law enforcement to obtain for testing a blood sample of a DUI suspect who is unconscious. A.R.S. § 28-1321(0); see former A.R.S. § 28-691(0) (1969 Ariz. Sess. Laws ch. 41, § 1). Pursuant to that statutory authority, when the events in this case occurred in September 2012, police officers (and for that matter a conscientious police department or its legal counsel) would have reasonably believed that they could obtain, without a warrant, a blood sample from an unconscious DUI suspect. That is particularly so when, as here, the DUI suspect’s serious injuries required him to be airlifted to a hospital across state lines for emergency medical treatment.
¶ 39 As of 2012, the warrantless blood draw from the unconscious DUI suspect here was permissible because it was authorized under Arizona’s implied consent law and was reasonable under the totality of the circumstances that the trial court found based on the investigating officer’s testimony. Contrary to the majority’s assertion, supra ¶20, under the law in effect at that time, admissibility of the blood test results did not require the state to show that the officer made “a case-specific determination whether a warrant could be timely secured.” But even if the majority is correct in concluding otherwise, and assuming that Arizona law applies, the good-faith exception to the exclusionary rule should apply because the blood draw was objectively reasonable and no legitimate purpose is served by suppressing the blood evidence in this ease.
¶ 40 Based on legal developments that occurred after September 2012, I agree (and the State concedes) that current law renders § 28-1321(0) unconstitutional as applied to this ease and that the blood draw from Hava-tone would not comply with Fourth Amendment standards now. I also agree that post-2012 cases support the rale of law the majority announces regarding future application of the unconscious clause. Supra ¶¶17-18. But the majority asserts that “the State concedes that exigent circumstances did not exist,” supra ¶17, when in fact the State expressly qualified its “concession” as follows: “Under recent Fourth Amendment decisions, [Hava-tone’s] warrantless blood draw was not justified by either the consent or exigency exceptions. But this was not so on the day officers drew blood from an unconscious [Hava-tone].”[4] Thus, the State merely agreed that “[the] blood draw was not reasonable under the exigent circumstances exception, as understood today.”
¶ 41 The majority faults the investigating DPS officer for having “followed DPS policy and training” in requesting the blood draw. Supra ¶22. But the majority’s emphasis on “department practice,” id. a matter barely touched on in the suppression hearing, disregards much of the officer’s testimony and the trial court’s findings. And we of course must *516 view the facts in the light most favorable to sustaining the trial court’s ruling. State v. Maciel, 240 Ariz. 46, 49 ¶ 9, 376 P.3d 938, 941 (2016).
¶42 It is quite clear that Officer M.P. accurately determined that Havatone was driving under the influence of alcohol and caused the head-on collision that seriously injured himself and others. See supra ¶¶ 4-6, 35. Contrary to the majority’s suggestion that the officer “fail[ed] to take individual circumstances into account,” supra ¶22, at the suppression hearing Officer M.P. testified that “exigent circumstances” supported his request for the blood draw based on the following factors that he identified: a very “chaotic” accident scene that he was responsible for investigating; the alcohol-related “serious collision” that resulted in severe injuries to Havatone and others; and Havatone (the driver/DUI suspect) being transported for emergency medical treatment out of state, where an Arizona warrant would have no force or effect. That testimony hardly suggests a disregard of circumstances warranting the officer’s blood-draw request. Indeed, viewed in the light most favorable to sustaining the trial court’s ruling, Officer M.P.’s testimony supported the court’s implicit determination that “Schmerber’s emergency requirement” was satisfied. Supra ¶27.
¶ 43 Based on the evidence presented at the suppression hearing and specifically citing the factors to which Officer M.P. testified, the trial court expressly found that “the totality of the circumstances” supported the officer’s request for a warrantless blood draw. We should defer to the trial court’s finding, which was supported by the record and applicable law in effect at the time of the blood draw. See Ornelas v. United States, 617 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that “as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal,” but that appellate courts should “review findings of historical fact only for clear error and ... give due weight to inferences drawn from those facts by resident judges and local law enforcement officers”); cf. Valley Medical Specialists v. Farber, 194 Ariz. 363, 366-67 ¶ 11, 982 P.2d 1277, 1280-81 (1999) (because “reasonableness is a fact-intensive inquiry that depends on weighing the totality of the eircumstances[,] ... we will give substantial deference both to the trial court’s findings of fact and its application of law to fact”).
¶ 44 Assuming that Arizona law applies in this matter, I also disagree with the majority’s conclusion that the good faith exception to the exclusionary rule does not apply. Rather, I agree with the trial court and the unanimous court of appeals that the seizure of Havatone’s blood sample was objectively reasonable and that no legitimate purpose is served by suppressing the blood evidence in this case. Therefore, the good faith exception applies. Accordingly, I respectfully dissent from section III of the majority’s opinion and its holding that under Arizona law evidence relating to Havatone’s blood sample must be suppressed.
¶ 45 The exclusionary rule bars the prosecution from presenting evidence obtained in violation of the Fourth Amendment in certain circumstances. Davis v. United States, 564 U.S. 229, 231-32, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). The rule is not required under the Fourth Amendment; instead, the Supreme Court created the rule to “compel respect for the constitutional guaranty” of that amendment. Id. at 236, 131 S.Ct. 2419 (citation omitted). The rule itself is “not a personal constitutional right” meant to protect the party whose Fourth Amendment right was infringed, but rather its sole purpose is to deter future Fourth Amendment violations. Id. at 236-37, 131 S.Ct. 2419. “Whether the exclusionary sanction is appropriately imposed in a particular case ... is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.” United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
¶ 46 The good faith exception to the exclusionary rule permits law enforcement to rea *517 sonably rely on legislative enactments, Illinois v. Krull, 480 U.S. 340, 349-50, 358-60, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), and binding appellate precedent, Davis, 564 U.S. at 240-41, 131 S.Ct. 2419. When performing a search pursuant to a legislative enactment, “[u]nless [the] statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law.” Krull, 480 U.S. at 349-50, 107 S.Ct. 1160. Even when the previously accepted application of a “statute is subsequently declared unconstitutional,” exclusion of evidence obtained under the statute “will not deter future Fourth Amendment violations.” Id. at 350, 107 S.Ct. 1160. “Therefore, when law enforcement officers act with an objectively reasonable good-faith belief that their conduct is lawful, deterrence is unnecessary and the exclusionary rule does not apply.” State v. Valenzuela, 239 Ariz. 299, 309 ¶ 31, 371 P.3d 627, 637 (2016) (internal quotation marks and citation omitted); see also A.R.S. § 13-3926 (codifying good-faith exception to the exclusionary rule). The majority gives scant attention to Krull, a case that directly supports application of the good faith exception here (as the court of appeals recognized).
¶ 47 “Indiscriminate application of the exclusionary rule ... may well generate disrespect for the law and administration of justice.” Leon, 468 U.S. at 907, 104 S.Ct. 3405. Only when the benefits of deterrence outweigh the social costs, which will include the high cost of excluding reliable, trustworthy evidence, should the rule operate. Davis, 564 U.S. at 237, 131 S.Ct. 2419.
¶ 48 As noted above, law enforcement may reasonably rely on statutory authority later declared unconstitutional, Krull, 480 U.S. at 349-50, 107 S.Ct. 1160, or on binding appellate precedent later overturned, Davis, 564 U.S. at 240-41, 131 S.Ct. 2419. Although either of these disjunctive factors is sufficient to support the good faith exception, both exist here. DPS Officer M.P.’s request for Nevada authorities to obtain a sample of Havatone’s blood was made pursuant to, and in accordance with, Havatone’s implied consent under A.R.S § 28-1321(C) and our interpretation of exigent circumstances in State v. Cocio, 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985). As of September 2012, § 28-1321(C) was presumed to be constitutional, State v. Thompson, 204 Ariz. 471, 474-75 ¶ 10, 65 P.3d 420, 423-24 (2003), and Codo had not been overruled or questioned. Applying the exclusionary rule, therefore, provides no deterrent effect justifying suppression of the BAC evidence in this case.
¶ 49 The majority holds that “the unconscious clause [in § 28-1321(C) ] can be constitutionally applied only when ease-specific exigent circumstances prevent law enforcement officers from obtaining a warrant.” Supra ¶17; see also id. ¶18 (“[A] nonconsensual blood draw from an unconscious person is constitutionally permissible if, under the totality of the circumstances, law enforcement officials reasonably determine that they cannot obtain a warrant "without significant delay that would undermine the effectiveness of the testing.”). But as the majority implies, supra ¶¶15-18, only cases decided by the United States Supreme Court and this Court after the events in question here compel or support that conclusion. See Missouri v. McNeely, — U.S. —, 133 S.Ct. 1552, 1561, 185 L.Ed.2d 696 (2013) (concluding that “[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so”); State v. Butler, 232 Ariz. 84, 88 ¶ 18, 302 P.3d 609, 613 (2013) (holding that, “independent of § 28-1321, the Fourth Amendment requires an arrestee’s consent to be voluntary to justify a warrantless blood draw”).
¶ 50 Those recent cases cannot retroactively support a finding that Officer M.P. exhibited “deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights” in ordering a blood sample pursuant to then-valid § 28-1321(0. Davis, 564 U.S. at 238, 131 S.Ct. 2419 (quoting Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)). As the Court in Davis *518 observed, the reasons for and benefits of exclusion vary based on the culpability of law enforcement, and absent deliberate, reckless, or grossly negligent violation of Fourth Amendment rights, grounds for exclusion are weak “when the police act with an objectively ‘reasonable good-faith belief that them conduct is lawful.” Id. (quoting Leon, 468 U.S. at 909, 104 S.Ct. 3405); see also Valenzuela, 239 Ariz. at 310 ¶ 35, 371 P.3d at 638 (applying Davis's standard in finding good faith reliance on statutory and case authority). Although the majority rests its decision on alleged “recurring or systemic negligence,” supra ¶21, the good faith exception clearly applies when, as here, law enforcement reasonably relies on a facially and presumptively valid statute to govern its actions, Krull, 480 U.S. at 349-50, 107 S.Ct. 1160, a principle the majority essentially ignores.
¶ 51 When the events in question occurred in September 2012, no court had suggested, let alone concluded, that § 28-1321(C) was invalid or otherwise did not authorize the officer’s conduct. In Campbell v. Superior Court, we found “no merit” to the argument that Arizona’s implied consent law (which at that time included the predecessor unconscious clause now found in § 28-1321(0) violates the Fourth Amendment. 106 Ariz. 542, 554, 479 P.2d 685, 697 (1971). More recently, we held solely “as a matter of statutory interpretation,” not based on constitutional grounds, that Arizona’s implied consent law “generally does not authorize law enforcement officers to administer [a blood test] without a warrant unless the arrestee expressly agrees to the test.” Carrillo v. Houser, 224 Ariz. 463, 463 ¶ 1, 467 ¶ 21, 232 P.3d 1245, 1245, 1249 (2010). But we expressly remarked that the unconscious clause in § 28-1321(C) was “not at issue,” and thus we did not address “circumstances in which subsection (C) ... may allow warrantless testing of persons incapable of refusing a test.” Id. at 464 ¶ 2 n.2, 467 ¶ 21, 232 P.3d at 1246, 1249.
¶52 In short, as of September 2012, no Arizona court had suggested that the continued validity of the unconscious clause was dubious. Yet the majority unpersuasively suggests that, under the state of the law at that time, the provisions of § 28-1321(0) “[were] such that a reasonable officer should have known that the statute was unconstitutional.” Supra ¶28 (quoting Krull, 480 U.S. at 355, 107 S.Ct. 1160).
¶ 53 Contrary to the majority’s reasoning, supra ¶¶24-27, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), neither casts doubt on the pre-McNeely validity of § 28-1321(C) nor negates application of the good faith exception here. In its discussion of Schmerber, supra ¶¶ 24-25, the majority omits a significant portion of the Court’s reasoning in finding that a warrantless blood draw from a DUI suspect in that ease did not violate the Fourth Amendment:
The officer in the present case ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened ‘the destruction of evidenee[.]’ We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a ease such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner’s arrest.
Schmerber, 384 U.S. at 770-71, 86 S.Ct. 1826 (citation omitted). Given the similar circumstances of this case (with the additional fact here that the injured DUI suspect was transported out of state), the DPS officer likewise “might reasonably have believed that he was confronted with an emergency” that authorized the warrantless blood draw. Id.
¶ 54 Tellingly, the pertinent Arizona cases interpreting and applying Schmerber do not support the majority’s analysis and conclusion, but instead support application of the *519 good faith exception. In Campbell, this Court rejected a Fourth Amendment challenge to Arizona’s implied consent law (including the unconscious clause) “in light of the holding in Schmerber.” 106 Ariz. at 545, 554, 479 P.2d at 688, 697. Later, in Codo, we expounded in greater depth on our understanding of Schmerber.
The United States Supreme Court in Schmerber held that a blood sample may be taken without a search warrant if it is taken in a medically approved manner and based on probable cause to believe the person is intoxicated. In such a situation exigent circumstances permit a warrant-less seizure because, “... the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.”
147 Ariz. at 285-86, 709 P.2d at 1344-45 (quoting Schmerber, 384 U.S. at 770, 86 S.Ct. 1826).
¶ 55 To authorize a warrantless blood draw under the medical blood draw exception, AR.S. § 28-1388(E) (former § 28-692(M)), Codo required the presence of “exigent circumstances.” 147 Ariz. at 286, 709 P.2d at 1345. But we concluded that “exigent circumstances existed” merely “because of the des-truetibility of the evidence.” Id. (citing Schmerber for the proposition that “[t]he highly evanescent nature of alcohol in the defendant’s blood stream guaranteed that the alcohol would dissipate over a relatively short period of time”). Based on that physiological phenomenon alone, this Court thus recognized a per se exigency. Stated differently, to establish exigency, the State was not required to show that there was no time or opportunity to obtain a warrant. Again, that additional requirement, first imposed by McNeely and now incorrectly applied retroactively by the majority here, did not apply to this ease. See State v. Reyes, 238 Ariz. 575, 578-79 ¶ 19, 364 P.3d 1134, 1137-38 (App. 2015) (noting that as of 2012, “Atizona courts had uniformly held that dissipation of alcohol in blood was in itself a sufficient exigent circumstance for purposes of the medical exception”) (citing Codo and other cases).
¶ 56 The majority alternatively posits that the law on this point “was, at most, unsettled” in September 2012. Supra ¶28. Again, I disagree. Although Codo did not address the unconscious clause, its finding of exigent circumstances based solely on the “highly evanescent nature of alcohol” in the blood and its rapid dissipation rate was not limited to the medical blood draw context. 147 Ariz. at 286, 709 P.2d at 1345. In that regard, consistent with Codo, other courts also viewed Schmerber as broadly establishing a per se exigency based on the dissipation factor alone. See State v. Shriner, 751 N.W.2d 538, 547 & n.11 (Minn. 2008) (citing Cocio among other cases that interpreted Schmerber “as concluding that the naturally rapid dissipation of alcohol in the bloodstream creates an emergency that justifies a warrantless blood draw”); State v. Blank, 90 P.3d 156, 164 n.1 (Alaska 2004) (Matthew, J., dissenting) (same); People v. Harrison, 405 Ill.Dec. 362, 58 N.E.3d 623, 628 (2016) (same); see also People v. Harris, 234 Cal.App.4th 671, 184 Cal.Rptr.3d 198, 205 (2015) (noting that before McNeely, “California courts uniformly interpreted Schmerber as permitting forced blood draws based solely on probable cause of DUI because the natural dissipation of alcohol or drugs in the blood was itself an exigent circumstance”).
¶ 57 The same exigency we recognized in Codo, the natural dissipation of alcohol, would also be an exigency when, as here, a suspect is unconscious. And as we acknowledged in our recent opinion regarding the medical blood draw exception (AR.S. § 28-1388(E)), the 2013 McNeely case requires us to disavow Codo ⅛ statement that “the natural dissipation of alcohol in the bloodstream itself establishes a per se exigency that authorizes a warrantless blood test,” and to instead announce that “in future cases, consistent with McNeely, the state must establish exigency by showing that under circumstances specific to those cases, it was impractical to obtain a warrant,” State v. Nissley, 241 Ariz. 327, 330-31 ¶¶ 11-12, 387 P.3d 1256, 1259-60 (2017) (emphasis added). Although I agree that, post-McNee *520 ly, “the unconscious clause can be constitutionally applied only when case-specific exigent circumstances prevent law enforcement officers from obtaining a warrant,” swpra ¶17, no such showing was required as of 2012.
¶ 68 The majority’s reliance on two court of appeals cases is even more curious. Supra ¶¶31-32. The majority correctly observes that the court in State v, Huffman “applied Schmerber,” supra ¶31, but disregards the Huffman court’s statement that under Schmerber the natural dissipation of alcohol in blood justified officers in taking a blood sample from the unconscious DUI suspect pursuant to the implied consent statute’s unconscious clause. 137 Ariz. 300, 303, 670 P.2d 405, 408 (App. 1983). The court thus affirmed the denial of Huffman’s motion to suppress even absent any other evidence of exigency or any showing that the officer could not have obtained a warrant.
¶ 59 State v, Flannigan, on which the majority also relies, supra ¶32, is inapposite. 194 Ariz. 150, 978 P.2d 127 (App. 1998). That case involved a driver’s methamphetamine (not alcohol) use and negligent-homicide conviction under Title 13, not DUI charges under Title 28; and Flannigan did not even “involve an application of the Arizona implied consent statute." Id. at 152-53 13, 978 P.2d at 129-30. Nor did the case involve either the unconscious clause at issue here or the medical blood draw exception, which the court recognized “would have entitled the police to receive a sample of [the suspect’s] blood regardless of his consent.” Id. at 153 ¶ 14, 978 P.2d at 130. As our court of appeals recently and correctly observed, “Flannigan did not signal a shift away from Codo” and “did not vitiate Codo, nor could it.” Reyes, 238 Ariz. at 578 ¶ 18, 364 P.3d at 1137. To the extent Flannigan’s reading of Schmerber deviated from Cocio, which the Flannigan court did not even cite, Cocio controls. Lind v. Superir Court, 191 Ariz. 233, 237 ¶ 20, 954 P.2d 1058, 1062 (App. 1998) (recognizing that court of appeals is “bound by our supreme court’s determinations”).
¶ 60 Because the seizure of a blood sample from Havatone while he was unconscious and receiving emergency medical treatment in another state was specifically authorized by a longstanding statute that no court had even questioned, much less ruled invalid, it matters not that Officer M.P.’s actions were taken pursuant to his DPS training or department policy. That training and policy were permissible under Arizona law, which Officer M.P. had no reason to question. Just as the officer had no reason to question the constitutionality of the statute based on then-existing law, he likewise had no reason to question the validity of the department’s policy. Whether Officer M.P. “might reasonably have believed that he was confronted with an emergency” that authorized the warrantless blood draw under the statute, or under the department’s policy, should not matter. Schmerber, 384 U.S. at 770, 86 S.Ct. 1826; see State v. Dennis, 297 Kan. 229, 300 P.3d 81, 83 (2013) (holding that “it was unnecessary for the officer to specifically articulate [a state statute] as authority for the [warrantless] search because application of a good-faith exception to the exclusionary rule is not governed by a subjective inquiry. The question is whether an objectively reasonable officer could rely on [the statute].”). The majority does not persuasively establish otherwise.
¶ 61 “[T]he ultimate touchstone of the Fourth Amendment is ‘reasonableness.’ ” Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). “An action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer’s state of mind, ‘as long as the circumstances, viewed objectively, justify [the] action.’” Id. at 404, 126 S.Ct. 1943 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)) (emphasis and alteration in Stuart); cf. Heien v. North Carolina, — U.S. —, 135 S.Ct. 530, 534, 539, 190 L.Ed.2d 475 (holding that an officer’s mistake of law can give rise to the reasonable suspicion necessary to uphold a seizure under the Fourth Amendment and noting that in determining whether a mistake of fact or law was objectively reasonable, “[w]e do not examine the subjective understanding of the particular officer involved”).
*521 ¶ 62 Applying that standard here, contrary to the majority’s conclusion, Officer M.P.’s request for Nevada authorities to obtain a sample of Havatone’s blood indeed was “objectively reasonable under Arizona law at the time of the draw.” Supra ¶34. The officer certainly did not “deliberately, recklessly, or with gross negligence” violate Havatone’s Fourth Amendment rights in requesting the blood draw. Davis, 564 U.S. at 240, 131 S.Ct. 2419. Therefore, given the “nonculpable, innocent police conduct” here, id. the good faith exception to the exclusionary rule applies. See Valenzuela, 239 Ariz. at 310 ¶ 35, 371 P.3d at 638 (finding good faith exception applied when officer “did not ‘deliberately, recklessly, or with gross negligence’ conduct the search in violation of the Fourth Amendment, but instead acted with ‘an objectively reasonable good-faith belief that the admonition was lawful”) (quoting Davis, 131 S.Ct. at 2427-28); Reyes, 238 Ariz. at 579 ¶ 19, 364 P.3d at 1138 (finding good faith exception applied, pr e-McNeely, when officer reasonably relied “on the evanescent nature of alcohol in [the DUI suspect’s] blood in requesting [in 2012] the blood sample with no warrant”); see also State v. Edwards, 853 N.W.2d 246, 254 ¶19 (S.D. 2014) (finding good faith exception applied to officer’s war-rantless, pr e-McNeely blood draw in 2013 when state’s case law had held “that the dissipation of alcohol in blood was a per se exigent circumstance sufficient by itself to justify conducting a blood test without a warrant”); State v. Meitler, 51 Kan.App.2d 308, 347 P.3d 670, 676 (Kan. App. 2015) (applying good faith exception when officer obtained warrantless blood draw from a hospitalized, unconscious DUI suspect in 2012 based on state’s implied consent law later declared unconstitutional).
¶ 63 Through its revisionist reinterpretation of prior Arizona cases, the majority imposes an unrealistic and unreasonable expectation on police officers to divine, based on subsequent case law, that a presumptively valid state statute does not actually allow or mean what it says. But law enforcement officers are not legal technicians and should not be expected to anticipate or predict a future change in our ease law. Exclusion of the BAC evidence here “does not result in appreciable deterrence” and thus “is unwarranted.” Arizona v. Evans, 514 U.S. 1,11,115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (internal quotation marks omitted). Under these circumstances, depriving the prosecution of that evidence necessarily “suppresses] the truth” and risks “set[ting] the criminal loose in the community without punishment.” Davis, 564 U.S. at 237,131 S.Ct. 2419 (citation omitted).

. At oral argument in this Court, the State likewise consistently qualified its concession in this same way and merely disclaimed any argument that “under McNeely, this case would present exigent circumstances.”