670 P.2d 405

**The STATE of Arizona, Appellee,**

v.

**Scott Kevin HUFFMAN, Appellant.**

**No. 2 CA–CR 2779.**

Court of Appeals of Arizona, Division 2.

April 13, 1983.

Rehearing Denied June 16, 1983.

Review Denied July 19, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Stolkin & Weiss, P.C. by Stephen M. Weiss, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant's drunk driving resulted in a jury finding him guilty of reckless manslaughter, involving the use of a dangerous instrument, an automobile. He was sentenced to imprisonment for the presumptive term of 7.5 years.

He contends the trial court erred by (1) failing to suppress the results of the blood test administered since he did not give consent, (2) failing to suppress evidence and statements obtained in violation of the physician-patient privilege and (3) instructing the jury that driving under the influence was an act inherently dangerous to human life and safety. He also contends the conviction should be reversed because the prosecution improperly commented on his failure to testify and because he was denied effective assistance of counsel. We affirm.

The accident occurred in the early morning hours of October 24, 1981. Several witnesses testified that they saw appellant run the red light at the intersection of East Broadway and North Wilmot Road in Tucson. There were estimates that he was traveling as fast as 60 to 70 miles per hour. After the accident it was observed that appellant's vehicle contained an empty Miller's beer carton, a six-pack of Michelob beer with two empty bottles, a Miller's beer

bottle three-fourths full, and an empty Bacardi rum bottle. When Officer Florence Martin of the Tucson Police Department arrived on the scene, she saw appellant sitting on the curb being helped by a paramedic. Her supervisor, Sgt. Monk, asked her to determine if there were any witnesses or suspects at the scene. She asked appellant if he had been involved in the accident. He replied that he was driving and that he was going southbound on Wilmot when he came to the intersection and that he entered on the green light. Actually, he was going northbound on Wilmot and entered on the red light. Appellant was bleeding, his speech was slow and deliberate and Officer Martin thought that he was under the influence of something.

Appellant was taken by ambulance to El Dorado Hospital. In the meantime, Officer Harriman, who had arrived at the scene, was directed by Sgt. Monk to go to El Dorado Hospital and conduct a blood alcohol test on appellant. He was also told that if appellant was to be released from the hospital, he was to place him in custody for driving under the influence.

When Officer Harriman walked into the hospital emergency room, he saw appellant yelling, screaming, and trying to get out of bed. Three hospital attendants were trying to restrain him. One of the attendants told appellant that they could not help him unless he told them what he had taken. He said that he had been drinking, had smoked some pot and some hashish, and had "blotted some acid."

A doctor informed Officer Harriman that appellant probably would not be able to respond to any questions. The officer requested that a blood sample be taken and the officer was present when it was done. Appellant was unconscious at the time. When the needle was inserted, he did not respond at all. A technician turned the blood sample over to Officer Harriman. Appellant's blood contained .29 per cent alcohol. Appellant contends that his blood sample was illegally taken because he was

never placed under arrest. We do not agree.

A.R.S. § 28–691 states, in part:

"A. Any person who operates a motor vehicle within this state gives consent, ... to a test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor. . . .

\*    \*    \*    \*    \*    \*

C. Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal is deemed not to have withdrawn the consent provided by subsection A of this section . . . ."

Subsection D of the section also provides that if the person under arrest refuses to submit to a test none shall be given. However, such a refusal will result in a suspension of operating privileges.

Although it can be argued that appellant, while not formally arrested, was actually under arrest because Officer Harriman was instructed to place appellant under arrest if he were to be released, and therefore his freedom of movement was restricted in a significant manner, we need not reach that issue since no arrest was required.

The evidence shows that at the time the blood was taken appellant was incapable of refusing the blood test and that A.R.S. § 28–691(C) applied. While it is clear that under § 28–691(A) there must be an arrest before the implied consent provision becomes operative, it is equally clear that there need not be a prior arrest under paragraph C since it would be extremely difficult to arrest a dead man. We do not believe the legislature intended to require an exercise of futility by having the police officer arrest a corpse or a live person who cannot even know he is under arrest.[1] All

---

1. See *State v. Mangels,* 166 Mont. 190, 531 P.2d 1313 (1975); *Galvan v. State,* 655 P.2d 155 (Nev.1982); see also, Annot., 72 A.L.R.3d 325, §§ 9 and 10.

that is required under the facts here is that there be probable cause to believe that the defendant is intoxicated and that the officer might reasonably believe that he is confronted with an emergency so that the delay necessary to obtain a warrant, under the circumstances, threatens destruction of the evidence. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Tolbert,* 100 N.J.Super. 350, 241 A.2d 865 (1968). Under the *Schmerber* test Officer Harriman was justified in taking the sample without arrest because of the probability that the evidence of the blood alcohol would be soon dissipated.

█ Appellant next contends that the trial court erred in admitting into evidence the statements he made in the emergency room. He contends that A.R.S. § 13–4062 prohibits the introduction of his statements into evidence. We do not agree. The cited statute states, in part:

"A person shall not be examined as a witness in the following cases:

\* \* \* \* \* \*

4. A physician or surgeon, without the consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The statute, by its terms, only applies to the examination of a physician or surgeon and does not apply to the examination of a police officer who overheard the statements. The trial court did not err in admitting the evidence.

█ The trial court instructed the jury, inter alia, as follows:

"Driving while under the influence of intoxicating liquors is an act inherently dangerous to human life and safety."

No objection was made below to the instruction but appellant now claims that fundamental error was committed since the instruction acted to relieve the state of its burden of proof. See *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We do not agree. Appellant was charged and convicted of manslaughter by recklessly causing the death of another person while using a dangerous instrument, to-wit: an automobile. The instruction came from the case of *State v. Dorame,* 121 Ariz. 108, 588 P.2d 850 (App.1978). This case involved a statute in existence prior to the effective date of our new criminal code, October 1, 1978. It is superfluous, irrelevant, and should not be given. It says that driving while under the influence is inherently dangerous. No one needs to be told that. The state had to prove more than engaging in "dangerous" conduct. It had to prove that the defendant was aware of and disregarded a " . . . substantial and unjustifiable risk that the result will occur or that the circumstance exists," and that the risk was " . . . of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." A.R.S. § 13–105(5)(c). The instruction did not relieve the state of its burden in proving these elements. There was no fundamental error.

█ Appellant did not testify at trial. His defense counsel, in closing argument, stated: "He [appellant] didn't testify. He doesn't know anything about the incident, and he couldn't be called as a witness. He couldn't add anything to the facts." The prosecutor in his rebuttal stated:

"Mr. Clark told you that the reason he [appellant] did not testify is because he didn't know anything about the incident, and can't remember it. *I didn't hear any evidence to that effect.* If you want to believe it, go ahead. There is no facts [sic] in evidence to support that argument." (Emphasis added).

Appellant contends that the prosecutor wrongfully commented on his failure to testify and that he was therefore denied a fair trial. See *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We do not agree. The doctrine of invited error applies here. The prosecutor's remark was invited or occasioned by the accused's counsel and is not a ground for reversal. *State v. Smith,* 101 Ariz. 407, 420 P.2d 278 (1966).

Appellant's last argument was that he was denied his Sixth Amendment right to effective assistance of counsel. The test in Arizona as to whether or not there was effective assistance of counsel is found in *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982), which is whether under the circumstances the attorney showed at least minimal competence in representing his criminal defendant. Appellant has cited several claims, admissions and errors made by his attorney at trial. We have examined them all and find that not one single one of them has any merit.

Affirmed.

HATHAWAY and BIRDSALL, J., concur.