IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA**,
*Appellee,*

*v.*

**DON JACOB HAVATONE**,
*Appellant.*

---

No. CR-15-0387-PR
Filed March 9, 2017

---

Appeal from the Superior Court in Mohave County
The Honorable Derek C. Carlisle, Judge Pro Tempore
No. CR201201535
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
1 CA-CR 14-0223
Filed October 27, 2015
**VACATED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Terry M. Crist, III (argued), Assistant Attorney General Criminal Appeals, Phoenix, Attorneys for State of Arizona

David Goldberg (argued), David Goldberg Attorney at Law, Fort Collins, CO, Attorney for Don Jacob Havatone

———————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICE TIMMER joined. VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL, concurred in part and dissented in part.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1        This case considers the constitutionality of A.R.S. § 28-1321(C), the "unconscious clause," which allows law enforcement officials to make or direct nonconsensual blood draws from unconscious DUI suspects. We hold that the provision is unconstitutional as applied to the facts of this case.

¶2        We also consider whether the good-faith exception to the exclusionary rule applies here. Following a collision after which defendant was airlifted to Nevada, a blood draw was taken at the request of Arizona law enforcement officials, raising the question, unresolved in the trial or appeals court, of which state's law applies to decide whether the blood test results should be suppressed. We hold that under Arizona law, the good-faith exception would not apply, and thus if our state's law applies, the evidence from the blood draw must be suppressed. However, we remand to the trial court to determine which jurisdiction's law applies and, if it is Nevada law, whether it supports application of the good-faith exception.

**I.**

¶3        On September 17, 2012, Don Jacob Havatone drove his SUV, with four other passengers, into an oncoming vehicle on Route 66 northeast of Kingman. A witness driving behind Havatone testified that before the collision the SUV was driving "erratically" for several miles and repeatedly crossed the center line. The other vehicle was occupied only by its driver,

L.S. After the collision, L.S. saw a man with his foot caught in the SUV's windshield crawl out over the hood and lie down in front of the vehicle. She saw a second occupant, later identified as Havatone, exit the driver's side of the SUV and lie down behind the vehicle.

¶4 Department of Public Safety ("DPS") Officer M.P. responded to the scene. He approached Havatone, whom medics were treating. Havatone confirmed he was driving the SUV. When M.P. asked Havatone what happened, Havatone did not respond. M.P. detected a "heavy odor" of alcohol emanating from all the SUV's occupants, including Havatone. M.P. looked inside the SUV and saw numerous beer cans and an open bottle of liquor.

¶5 Havatone was airlifted to a Las Vegas hospital for treatment. Without seeking a warrant, Officer M.P. followed DPS policy and instructed DPS dispatch to request that Las Vegas police officers obtain a blood sample. Havatone was unconscious when the blood sample was taken. The sample showed a blood alcohol concentration ("BAC") of 0.212.

¶6 The State charged Havatone with driving under the influence of intoxicating liquor while his license was suspended or revoked, aggravated driving under the extreme influence of intoxicating liquor with a BAC of 0.20 or more with a suspended license, aggravated assault of L.S. with a deadly weapon or dangerous instrument, recklessly endangering L.S. with a substantial risk of imminent death, and four counts of aggravated assault of the occupants of his vehicle with a deadly weapon or dangerous instrument.

¶7 Havatone moved to suppress the blood test results, arguing that the test was a warrantless search prohibited by the Fourth Amendment. The trial court denied the motion, finding the search permissible under both Arizona and Nevada law because the police had probable cause to believe that Havatone was driving while intoxicated and both states' "implied consent" laws authorize blood draws from unconscious DUI suspects. *See* A.R.S. § 28-1321(C); Nev. Rev. Stat. § 484C.160(1), (3). Alternatively, the court ruled that even if a warrant was required, the police acted in reliance on statutes and cases in effect when the blood was seized, thus satisfying the good-faith exception to the

3

exclusionary rule.

¶8         The jury found Havatone guilty of four offenses as charged and guilty of lesser included offenses for other charges.  The trial court imposed concurrent sentences of 17.5 years in prison.

¶9         On appeal, Havatone argued that the statute authorizing his blood draw while unconscious violated his Fourth Amendment rights.  The court of appeals affirmed.  It did not reach the constitutional question but reasoned that even if the blood draw violated Havatone's Fourth Amendment rights, it was shielded by the good-faith exception to the exclusionary rule.  *State v. Havatone*, 1 CA-CR 14-0223, at *5 ¶ 20, *6 ¶ 25 (Ariz. App. Oct. 27, 2015) ("[T]he search was objectively reasonable in either state, so we—like the trial court—need not decide whether Arizona or Nevada law applies.").

¶10        We granted review because the issues presented are of first impression and statewide importance.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶11        We review rulings on motions to suppress for an abuse of discretion, considering only the evidence presented at the suppression hearing and viewing it in the light most favorable to sustaining the trial court's ruling.  *State v. Butler*, 232 Ariz. 84, 87 ¶ 8, 302 P.3d 609, 612 (2013).  "An error of law constitutes an abuse of discretion."  *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9, 349 P.3d 200, 202 (2015).  Both a statute's constitutionality under the Fourth Amendment and the applicability of the good-faith exception to the exclusionary rule are questions of law that we decide de novo.  *Gallardo v. State*, 236 Ariz. 84, 87 ¶ 8, 336 P.3d 717, 720 (2014); *State v. Crowley*, 202 Ariz. 80, 91 ¶ 32, 41 P.3d 618, 629 (App. 2002).

¶12        Arizona's "implied consent" statute, A.R.S. § 28-1321, reads in pertinent part:

A. A person who operates a motor vehicle in this state gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed . . . while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle in this state . . . (1) [while] under the influence of intoxicating liquor or drugs.

. . . .

C. A person who is dead, unconscious or otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the consent provided by subsection A . . . .

Subsection C, at issue here, is known as the "unconscious clause."

¶13        After we granted review, the State acknowledged that the unconscious clause is unconstitutional as applied to the facts of the case. The State takes the position that blood may be taken from a DUI suspect under the unconscious clause only if case-specific exigent circumstances exist. We agree.

¶14        A blood draw taken or directed by the government implicates privacy rights protected by the Constitution. The Fourth Amendment provides,

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized.

U.S. Const. amend. IV.[1]

**¶15**        In *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), decided after the arrest here, the United States Supreme Court considered the constitutionality of nonconsensual, warrantless blood draws in DUI cases where police relied solely upon the natural dissipation of alcohol in the blood. Such a "compelled physical intrusion" beneath the skin and into the veins "to obtain a sample of his blood for use as evidence in a criminal investigation . . . implicates an individual's 'most personal and deep-rooted expectations of privacy.'"  *Id.* at 1558 (citation omitted).  The Court confirmed the view, expressed in prior cases, that such searches could be justified only by exigent circumstances. "In short," the Court ruled, "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically.  Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances."  *Id.* at 1563.

**¶16**        Following *McNeely*, we ruled in *State v. Butler* that Arizona's implied consent statute, A.R.S. § 28-1321, does not relieve the state of establishing voluntary consent or another exception to the warrant requirement, such as exigent circumstances, to justify warrantless blood draws from DUI suspects.  232 Ariz. at 87–88 ¶¶ 12–13, 18, 302 P.3d at 612–13.  Furthermore, in *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2180 (2016), the United States Supreme Court noted that the exigency exception "always requires case-by-case determinations."

**¶17**        *McNeely* and *Butler* establish that absent an exception to the warrant requirement, nonconsensual, warrantless blood draws from DUI suspects are unconstitutional.  We conclude that the unconscious clause can

[1] Article 2, section 8 of the Arizona Constitution also provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."  Havatone did not invoke his rights under this provision.

be constitutionally applied only when case-specific exigent circumstances prevent law enforcement officers from obtaining a warrant. Here, the State concedes that exigent circumstances did not exist. Rather, Officer M.P. testified he was following department practice to procure a blood draw anytime a DUI suspect was sent out of state for emergency treatment. Because the test was taken pursuant to a blanket policy rather than the presence of case-specific exigent circumstances, Havatone's Fourth Amendment rights were violated.

¶18            Our decision does not vitiate § 28-1321(C). Where police have probable cause to believe a suspect committed a DUI, a nonconsensual blood draw from an unconscious person is constitutionally permissible if, under the totality of the circumstances, law enforcement officials reasonably determine that they cannot obtain a warrant without significant delay that would undermine the effectiveness of the testing. *Cf. McNeely*, 133 S. Ct. at 1561 (noting that "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so").

## III.

¶19            Although the dissent attempts gamely to resuscitate the argument, ¶ 40, the State expressly concedes that the record "does not show exigent circumstances beyond the natural dissipation of alcohol in Appellant's blood." Hence, the search violated the Fourth Amendment and the only issue is whether the good-faith exception to the exclusionary rule applies. *Cf. State v. Valenzuela*, 239 Ariz. 299, 309 ¶ 31, 371 P.3d 627, 637 (2016) ("[W]hen law enforcement officers act with an objectively reasonable good-faith belief that their conduct is lawful, deterrence is unnecessary and the exclusionary rule does not apply."). To resolve that issue, we must decide whether before *McNeely*, DPS reasonably applied a policy of directing warrantless blood draws from unconscious DUI suspects being flown out of state for medical treatment based on the belief that the natural dissipation of alcohol in the blood constituted a per se exigency. The State bears the burden of proving the good-faith exception applies. *See, e.g.*, *Crowley*, 202 Ariz. at 91 ¶ 32, 41 P.3d at 629.

7

¶20     The State argues that the blood test results should not be suppressed for two reasons:  (1) at the time of the blood draw here, the unconscious clause expressly authorized the blood draw and had not been ruled unconstitutional; and (2) nonconsensual, warrantless blood draws were permitted based on natural alcohol dissipation in the blood prior to *McNeely*, which was not decided until after Havatone's blood was taken. For those reasons, the State asserts that the blood draw satisfies the good-faith exception to the exclusionary rule.  We disagree.  DPS should have known that routinely directing blood draws from DUI suspects who were sent out of state for emergency treatment, without making a case-specific determination whether a warrant could be timely secured, was either impermissible or at least constitutionally suspect.  Thus, the good-faith exception does not apply.

¶21     The dissent suggests that the good-faith exception applies unless the police officers exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.  *See* ¶ 50 (citing *Davis v. United States*, 564 U.S. 229, 240 (2011)).  Because the exclusionary rule also serves to deter "recurring or systemic negligence," the good-faith exception will not apply in such circumstances.  *See Herring v. United States*, 555 U.S. 135, 144 (2009); *see also Davis*, 564 U.S. at 239 (relying on *Herring* in concluding that isolated, nonrecurring police negligence "lacks the culpability required to justify the harsh sanction of exclusion").   Such "recurring or systemic negligence" is present in this case.

¶22     Here, the officer followed DPS policy and training that seeking a warrant was unnecessary under the circumstances.  When the Fourth Amendment violation occurred not as the result of an officer's fact-specific determination that obtaining a warrant is infeasible but pursuant to department practice making such determination unnecessary, we impute to the law enforcement agency the responsibility to assure that unlawful seizures will not occur.  *See Davis*, 564 U.S. at 240 (contrasting "'recurring or systemic negligence' on the part of law enforcement," with conduct that "involves only simple, 'isolated' negligence").  "We should reasonably presume that law enforcement officials, who stand in the best position to monitor such errors as occurred here, can influence mundane communication procedures in order to prevent those errors.   That presumption comports with the notion that the exclusionary rule exists to

deter future police misconduct systemically." *Arizona v. Evans*, 514 U.S. 1, 21 (1995) (Stevens, J., dissenting) (citing, *inter alia*, *Stone v. Powell*, 428 U.S. 465, 492 (1976)); *accord State v. Mitchell*, 234 Ariz. 410, 419 ¶ 31, 323 P.3d 69, 78 (App. 2014) (good-faith exception provides "meaningful deterrence because . . . it incentivizes law enforcement to err on the side of constitutional behavior"). Suppression of the blood test results here will have a deterrent effect on police practices that fail to take individual circumstances into account as the United States Supreme Court has long required. *Cf. Ybarra v. Illinois*, 444 U.S. 85, 87, 96 (1979) (striking down statute allowing officers to detain or search any persons in premises subject to a search warrant, holding such searches must be based on individual circumstances); *Richards v. Wisconsin*, 520 U.S. 385, 387–88 (1997) (invalidating per se rule that no knock to announce police presence is permissible in drug warrant cases).

¶23 The record here shows that the DPS officer followed the department's regular practice, in which he was trained, to request blood draws without a warrant whenever a DUI suspect was flown out of state for treatment. As the dissent aptly puts it, DPS was acting on the belief that the dissipation of alcohol in the blood created a "per se exigency" that, before *McNeely*, ostensibly justified blood draws from DUI suspects. ¶ 57.

¶24 That belief was mistaken. *Davis* instructs that law enforcement acts in good faith if "binding appellate precedent specifically *authorizes* a particular police practice." 564 U.S. at 241. But warrantless blood draws from DUI suspects based on a "per se exigency" rather than the totality of individual circumstances have been discredited for over fifty years. In *Schmerber v. California*, 384 U.S. 757 (1966), the United States Supreme Court upheld admission of a blood test taken from a defendant whom police had probable cause to believe had committed a DUI offense. The Court observed, "Search warrants are ordinarily required for searches of dwellings, and *absent an emergency*, no less could be required where intrusions into the human body are concerned." *Id.* at 770 (emphasis added).

¶25 The dissent suggests that the emergency in *Schmerber* was based on the natural dissipation of alcohol in the blood—that is, a per se exigency—rather than individualized circumstances making a warrant

untenable. ¶ 53. It was not. The Court concluded that the emergency justifying the warrantless, nonconsensual blood draw was based on the "special facts" of the case, "where time had to be taken to bring the accused to the hospital and to investigate the scene of the accident," thus "there was no time to seek out a magistrate and secure a warrant." *Id.* at 770–71.

¶26 It is true that alcohol dissipation starts a fast time clock, but under *Schmerber*, additional facts are necessary to show it was not feasible to obtain a warrant during that time frame. As *McNeely* observes, in the decades since *Schmerber*, technology has made it possible to quickly obtain warrants by phone or otherwise. 133 S. Ct. at 1561–63. The State does not allege any such "special facts" justifying a warrantless blood draw. Indeed, the State concedes that no exigency existed apart from the ordinary dissipation of alcohol in the blood, and the DPS officer testified that telephonic warrants are possible but he was trained to not obtain a warrant when a DUI suspect is airlifted out of state.

¶27 The Court in *McNeely* emphasized that it did not announce a new constitutional rule but rather reaffirmed *Schmerber*'s emergency requirement. "[I]n *Schmerber*, we considered all of the facts and circumstances of the particular case and carefully based our holding on those specific facts." *McNeely*, 133 S. Ct. at 1560; *see also id.* at 1559 ("Our decision in *Schmerber* applied this totality of the circumstances approach"); *id.* at 1561 (courts should "decide each case on its facts, as we did in *Schmerber*"). A per se rule that warrants are never required is at considerable odds with the *Schmerber* rule that warrants are required absent special facts. Hence, the routine practice of directing blood draws in a particular context, where no exigent circumstances existed, was impermissible at the time Havatone was arrested.

¶28 The State argues that the good-faith exception applies because § 28-1321(C) had not been declared unconstitutional when Havatone's blood was taken. *Cf. Illinois v. Krull*, 480 U.S. 340, 355 (1987) ("Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional."). Nor do we declare it unconstitutional here in all respects. *See* ¶ 18. But *Schmerber*'s special facts rule was known, thereby rendering legally untenable the routine practice

of warrantless blood draws from unconscious DUI suspects transported to other states for medical purposes. And no binding precedents specifically authorized such a practice. Arizona case law regarding a per se exigency was, at most, unsettled.

¶29    When the law is unsettled, "exclusion of the evidence obtained" in a questionable search or seizure "may deter Fourth Amendment violations." *Davis*, 564 U.S. at 250 (Sotomayor, J., concurring in the judgment); *accord United States v. Lara*, 815 F.3d 605, 613 (9th Cir. 2016) ("We decline to expand the rule of *Davis* to cases in which the appellate precedent, rather than being binding, is (at best) unclear."). As the Court observed in *United States v. Johnson*, if the exclusionary rule is not applied in "close" cases, "law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice" would not be excluded. 457 U.S. 537, 561 (1982); *accord Mitchell*, 234 Ariz. at 419 ¶ 31, 323 P.3d at 78. Similarly, Justice O'Connor warned in *Krull* that "the failure to apply the exclusionary rule in the very case in which a state statute is held to have violated the Fourth Amendment destroys all incentive on the part of individual criminal defendants to litigate the violation of their Fourth Amendment rights." 480 U.S. at 369 (O'Connor, J., dissenting).

¶30    Arizona case law in effect at the time of Havatone's blood test did not "specifically authorize[] a particular police practice," *see Davis*, 564 U.S. at 241 (emphasis omitted), of directing warrantless, nonconsensual blood draws from unconscious DUI suspects absent exigent circumstances. In *State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985), we held that a formal arrest was not necessary for police to obtain a blood sample from a DUI suspect drawn by medical personnel for treatment purposes. We applied *Schmerber* as recognizing exigent circumstances based on dissipation of alcohol in the blood. *Id.* at 285–86, 709 P.2d at 1344–45. Construing former A.R.S. § 28-692(M) (renumbered 28-1388(E)), which allowed police to obtain medical blood samples, together with applicable United States Supreme Court precedents, we held that no warrant is necessary when (1) probable cause exists to believe the suspect has violated DUI laws, (2) "exigent circumstances are present," and (3) "the blood is drawn for

medical purposes by medical personnel." *Id.* at 286, 709 P.2d at 1345. We recently rejected any suggestion that *Cocio* established that alcohol in the bloodstream constitutes a per se exigency. *See State v. Nissley*, 241 Ariz. 327, 330 ¶ 11, 387 P.3d 1256, 1259 (2017) (holding the dissipation of alcohol in the blood does not create a per se exigency, but otherwise leaving the *Cocio* decision intact).[2] But even before this clarification, *Cocio* was distinguishable because it did not involve a government-directed blood draw, but was limited to the medical draw exception, where the state obtains a portion of blood already drawn for medical reasons. *See Cocio*, 147 Ariz. at 286–87, 709 P.2d at 1345–46 ("[T]he intrusion by the police was minimal. The blood extraction was *not* performed at the request of the police, but pursuant to the orders of the attending physician for medical purposes. Thus, the intrusion by the police in this case was not the needle puncture and the insertion of the needle into the vein, but merely a sampling off of an additional portion of the defendant's blood."). Whatever police conduct *Cocio* "specifically authorized," as the Court there made clear, was limited to the less-invasive state action at issue in that case.

**¶31** In *State v. Huffman*, 137 Ariz. 300, 302, 670 P.2d 405, 407 (App. 1983), the court of appeals held that no arrest is necessary for a blood draw under the unconscious exception. The court applied *Schmerber*, holding that a warrantless, nonconsensual blood draw from an unconscious DUI suspect requires probable cause "and that the officer might reasonably believe that he is confronted with an emergency so that the delay necessary to obtain a warrant, under the circumstances, threatens destruction of the evidence." *Id.* at 302–03, 670 P.2d at 407–08. Far from specifically authorizing a per se rule, *Huffman* properly interpreted *Schmerber* to require an individualized, totality of the circumstances determination.

---

[2] The dissent also cites *Campbell v. Superior Ct.*, 106 Ariz. 542, 554, 479 P.2d 685, 696 (1971), for the proposition that this Court found "no merit" to a constitutional challenge to the implied consent law. The *Campbell* Court's analysis is two sentences, and appears to comprise a facial challenge to the whole statute, which we agree is not facially unconstitutional. Certainly it does not remotely amount to the specific appellate court authorization required to find good faith under *Davis*.

¶**32** In *State v. Flannigan*, 194 Ariz. 150, 152 ¶ 9, 978 P.2d 127, 129 (App. 1998), police officers directed a blood draw from a DUI suspect relying on "the department's policy that exigent circumstances always exist in vehicular aggravated assault and manslaughter cases." Although the case involved a different statute, the court of appeals analyzed *Schmerber*'s exigent circumstances rule as we do here:

> In *Schmerber*, exigent circumstances existed because of the evanescent quality of alcohol *and* because the police reasonably believed that they did not have time to "seek out a magistrate and secure a warrant" before evidence of the defendant's intoxication would be destroyed. *Schmerber* does not provide a blanket exception to the warrant requirement whenever a suspect is believed to be under the influence of alcohol or drugs. Rather, the evanescent quality of alcohol and drugs in a person's body creates an exigency only if the evidence might disappear before the police can obtain a warrant.

*Id.* at 154 ¶ 20, 978 P.2d at 131. The court aptly concluded, "The officers' rote application of the department's untenable policy . . . violated Flannigan's right to be free from unreasonable search and seizure." *Id.* at 155 ¶ 25, 978 P.2d at 132.

¶**33** Here, the officer's "rote application" of department policy to obtain warrantless, nonconsensual blood draws from DUI suspects who are transported to another state for medical treatment was inconsistent with federal and state appellate precedents, and certainly was not "specifically authorized."

¶**34** For those reasons, DPS's practice of directing routine, warrantless, nonconsensual blood draws from DUI suspects sent outside the state for medical treatment was not objectively reasonable under Arizona law at the time of the draw. Therefore, the trial and appeals courts erred as a matter of Arizona law in concluding that the State satisfied its burden of proving that the impermissible blood draw was justified by the good-faith exception to the exclusionary rule.

**¶35**    The dissent asserts that our decision "risks 'set[ting] the criminal loose in the community without punishment.'"   ¶ 63.   As in any case in which law enforcement tactics are measured against constitutional protections, this may be the unavoidable result in some DUI cases.   But other evidence of impaired driving likely exists in such cases that support continued prosecution for DUI.   Here, evidence of probable cause, and hence evidence potentially supporting a guilty verdict, was abundant (defendant was the driver, witnesses saw the car driving erratically, the officer smelled alcohol, and there were beer cans and a liquor bottle at the accident scene).   Moreover, A.R.S. § 28-1321(B) provides for suspension of a driver's license where a person arrested for DUI fails to submit to alcohol testing.   *See Carrillo v. Houser*, 224 Ariz. 463, 465–66 ¶ 13, 232 P.3d 1245, 1247–48 (2010); *see also McNeely*, 133 S. Ct. at 1565–67 (plurality) (noting such sanctions and concluding that "the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case").

## IV.

**¶36**    The parties disagree whether Nevada or Arizona law applies to this case.[3]   The trial and appeals courts did not resolve the issue because they concluded the good-faith exception would apply in either state.   The parties did not extensively address the issue in this Court.   Hence, we remand the case to the trial court to determine, in the first instance, whether Arizona or Nevada law applies.   If the court concludes that Nevada law applies, it should determine whether the good-faith exception applies.   If the good-faith exception does not apply, the trial court must vacate the

---

[3] Nevada's implied consent law includes an unconscious clause directing a mandatory blood draw, providing that where a DUI suspect "is dead or unconscious, the officer shall direct that samples of blood from the person [] be tested."   Nev. Rev. Stat. § 484C.160(3).   The Nevada Supreme Court recently held unconstitutional a different section of the implied consent law because it did not allow a DUI suspect to withdraw consent.   *Byars v. State*, 336 P.3d 939, 946 (Nev. 2014).

convictions and sentences, suppress the blood-draw evidence, and order a new trial.

¶**37**        Accordingly, we vacate the court of appeals' decision, reverse the trial court's decision on the motion to suppress, and remand to that court for further proceedings consistent with this opinion.

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

PELANDER, V.C.J., joined by BRUTINEL, J., concurring in part and dissenting in part.

¶38 For almost fifty years, Arizona's "implied consent" law has specifically and expressly allowed law enforcement to obtain for testing a blood sample of a DUI suspect who is unconscious. A.R.S. § 28-1321(C); *see* former A.R.S. § 28-691(C) (1969 Ariz. Sess. Laws ch. 41, § 1). Pursuant to that statutory authority, when the events in this case occurred in September 2012, police officers (and for that matter a conscientious police department or its legal counsel) would have reasonably believed that they could obtain, without a warrant, a blood sample from an unconscious DUI suspect. That is particularly so when, as here, the DUI suspect's serious injuries required him to be airlifted to a hospital across state lines for emergency medical treatment.

¶39 As of 2012, the warrantless blood draw from the unconscious DUI suspect here was permissible because it was authorized under Arizona's implied consent law and was reasonable under the totality of the circumstances that the trial court found based on the investigating officer's testimony. Contrary to the majority's assertion, *supra* ¶ 20, under the law in effect at that time, admissibility of the blood test results did not require the state to show that the officer made "a case-specific determination whether a warrant could be timely secured." But even if the majority is correct in concluding otherwise, and assuming that Arizona law applies, the good-faith exception to the exclusionary rule should apply because the blood draw was objectively reasonable and no legitimate purpose is served by suppressing the blood evidence in this case.

¶40 Based on legal developments that occurred after September 2012, I agree (and the State concedes) that current law renders § 28-1321(C) unconstitutional as applied to this case and that the blood draw from Havatone would not comply with Fourth Amendment standards now. I also agree that post-2012 cases support the rule of law the majority announces regarding future application of the unconscious clause. *Supra* ¶¶ 17-18. But the majority asserts that "the State concedes that exigent circumstances did not exist," *supra* ¶ 17, when in fact the State expressly qualified its "concession" as follows: "Under recent Fourth Amendment decisions, [Havatone's] warrantless blood draw was not justified by either

16

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

the consent or exigency exceptions. But this was not so on the day officers drew blood from an unconscious [Havatone]."[4] Thus, the State merely agreed that "[the] blood draw was not reasonable under the exigent circumstances exception, *as understood today*."

¶41 The majority faults the investigating DPS officer for having "followed DPS policy and training" in requesting the blood draw. *Supra* ¶ 22. But the majority's emphasis on "department practice," *id.*, a matter barely touched on in the suppression hearing, disregards much of the officer's testimony and the trial court's findings. And we of course must view the facts in the light most favorable to sustaining the trial court's ruling. *State v. Maciel*, 240 Ariz. 46, 49 ¶ 9, 375 P.3d 938, 941 (2016).

¶42 It is quite clear that Officer M.P. accurately determined that Havatone was driving under the influence of alcohol and caused the head-on collision that seriously injured himself and others. *See supra* ¶¶ 4-5, 35. Contrary to the majority's suggestion that the officer "fail[ed] to take individual circumstances into account," *supra* ¶ 22, at the suppression hearing Officer M.P. testified that "exigent circumstances" supported his request for the blood draw based on the following factors that he identified: a very "chaotic" accident scene that he was responsible for investigating; the alcohol-related "serious collision" that resulted in severe injuries to Havatone and others; and Havatone (the driver/DUI suspect) being transported for emergency medical treatment out of state, where an Arizona warrant would have no force or effect. That testimony hardly suggests a disregard of circumstances warranting the officer's blood-draw request. Indeed, viewed in the light most favorable to sustaining the trial court's ruling, Officer M.P.'s testimony supported the court's implicit determination that "*Schmerber*'s emergency requirement" was satisfied. *Supra* ¶ 27.

¶43 Based on the evidence presented at the suppression hearing

---

[4] At oral argument in this Court, the State likewise consistently qualified its concession in this same way and merely disclaimed any argument that "under *McNeely*, this case would present exigent circumstances."

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

and specifically citing the factors to which Officer M.P. testified, the trial court expressly found that "the totality of the circumstances" supported the officer's request for a warrantless blood draw. We should defer to the trial court's finding, which was supported by the record and applicable law in effect at the time of the blood draw. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," but that appellate courts should "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers"); *cf. Valley Medical Specialists v. Farber*, 194 Ariz. 363, 366-67 ¶ 11, 982 P.2d 1277, 1280-81 (1999) (because "reasonableness is a fact-intensive inquiry that depends on weighing the totality of the circumstances[,] . . . we will give substantial deference both to the trial court's findings of fact and its application of law to fact").

¶44 Assuming that Arizona law applies in this matter, I also disagree with the majority's conclusion that the good faith exception to the exclusionary rule does not apply. Rather, I agree with the trial court and the unanimous court of appeals that the seizure of Havatone's blood sample was objectively reasonable and that no legitimate purpose is served by suppressing the blood evidence in this case. Therefore, the good faith exception applies. Accordingly, I respectfully dissent from section III of the majority's opinion and its holding that under Arizona law evidence relating to Havatone's blood sample must be suppressed.

¶45 The exclusionary rule bars the prosecution from presenting evidence obtained in violation of the Fourth Amendment in certain circumstances. *Davis v. United States*, 564 U.S. 229, 231-32 (2011). The rule is not required under the Fourth Amendment; instead, the Supreme Court created the rule to "compel respect for the constitutional guaranty" of that amendment. *Id.* at 236 (citation omitted). The rule itself is "not a personal constitutional right" meant to protect the party whose Fourth Amendment right was infringed, but rather its sole purpose is to deter future Fourth Amendment violations. *Id.* at 236-37. "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *United States v. Leon*, 468

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

U.S. 897, 906 (1984).

**¶46**     The good faith exception to the exclusionary rule permits law enforcement to reasonably rely on legislative enactments, *Illinois v. Krull*, 480 U.S. 340, 349-50, 358-60 (1987), and binding appellate precedent, *Davis*, 564 U.S. at 240-41.  When performing a search pursuant to a legislative enactment, "[u]nless [the] statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."  *Krull*, 480 U.S. at 349-50.  Even when the previously accepted application of a "statute is subsequently declared unconstitutional," exclusion of evidence obtained under the statute "will not deter future Fourth Amendment violations."  *Id.* at 350.  "Therefore, when law enforcement officers act with an objectively reasonable good-faith belief that their conduct is lawful, deterrence is unnecessary and the exclusionary rule does not apply."  *State v. Valenzuela*, 239 Ariz. 299, 309 ¶ 31, 371 P.3d 627, 637 (2016) (internal quotation marks and citation omitted); *see also* A.R.S. § 13-3925 (codifying good-faith exception to the exclusionary rule).  The majority gives scant attention to *Krull*, a case that directly supports application of the good faith exception here (as the court of appeals recognized).

**¶47**     "Indiscriminate application of the exclusionary rule . . . may well generate disrespect for the law and administration of justice."  *Leon*, 468 U.S. at 907.  Only when the benefits of deterrence outweigh the social costs, which will include the high cost of excluding reliable, trustworthy evidence, should the rule operate.  *Davis*, 564 U.S. at 237.

**¶48**     As noted above, law enforcement may reasonably rely on statutory authority later declared unconstitutional, *Krull*, 480 U.S. at 349-50, or on binding appellate precedent later overturned, *Davis*, 564 U.S. at 240-41.  Although either of these disjunctive factors is sufficient to support the good faith exception, both exist here.  DPS Officer M.P.'s request for Nevada authorities to obtain a sample of Havatone's blood was made pursuant to, and in accordance with, Havatone's implied consent under A.R.S § 28-1321(C) and our interpretation of exigent circumstances in *State v. Cocio*, 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985).  As of September 2012, § 28-1321(C) was presumed to be constitutional, *State v. Thompson*, 204 Ariz. 471, 474-75 ¶ 10, 65 P.3d 420, 423-24 (2003), and *Cocio* had not been

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

overruled or questioned. Applying the exclusionary rule, therefore, provides no deterrent effect justifying suppression of the BAC evidence in this case.

**¶49** The majority holds that "the unconscious clause [in § 28-1321(C)] can be constitutionally applied only when case-specific exigent circumstances prevent law enforcement officers from obtaining a warrant." *Supra* ¶ 17; *see also id.* ¶ 18 ("[A] nonconsensual blood draw from an unconscious person is constitutionally permissible if, under the totality of the circumstances, law enforcement officials reasonably determine that they cannot obtain a warrant without significant delay that would undermine the effectiveness of the testing."). But as the majority implies, *supra* ¶¶ 15-18, only cases decided by the United States Supreme Court and this Court after the events in question here compel or support that conclusion. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013) (concluding that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so"); *State v. Butler*, 232 Ariz. 84, 88 ¶ 18, 302 P.3d 609, 613 (2013) (holding that, "independent of § 28-1321, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw").

**¶50** Those recent cases cannot retroactively support a finding that Officer M.P. exhibited "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights" in ordering a blood sample pursuant to then-valid § 28-1321(C). *Davis*, 564 U.S. at 238 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). As the Court in *Davis* observed, the reasons for and benefits of exclusion vary based on the culpability of law enforcement, and absent deliberate, reckless, or grossly negligent violation of Fourth Amendment rights, grounds for exclusion are weak "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Id.* (quoting *Leon*, 468 U.S. at 909); *see also Valenzuela*, 239 Ariz. at 310 ¶ 35, 371 P.3d at 638 (applying *Davis*'s standard in finding good faith reliance on statutory and case authority). Although the majority rests its decision on alleged "recurring or systemic negligence," *supra* ¶ 21, the good faith exception clearly applies when, as here, law enforcement reasonably relies on a facially and presumptively valid statute to govern its

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

actions, *Krull*, 480 U.S. at 349-50, a principle the majority essentially ignores.

**¶51** When the events in question occurred in September 2012, no court had suggested, let alone concluded, that § 28-1321(C) was invalid or otherwise did not authorize the officer's conduct. In *Campbell v. Superior Court*, we found "no merit" to the argument that Arizona's implied consent law (which at that time included the predecessor unconscious clause now found in § 28-1321(C)) violates the Fourth Amendment. 106 Ariz. 542, 554, 479 P.2d 685, 697 (1971). More recently, we held solely "as a matter of statutory interpretation," not based on constitutional grounds, that Arizona's implied consent law "generally does not authorize law enforcement officers to administer [a blood test] without a warrant unless the arrestee expressly agrees to the test." *Carrillo v. Houser*, 224 Ariz. 463, 463 ¶ 1, 467 ¶ 21, 232 P.3d 1245, 1245, 1249 (2010). But we expressly remarked that the unconscious clause in § 28-1321(C) was "not at issue," and thus we did not address "circumstances in which subsection (C) . . . may allow warrantless testing of persons incapable of refusing a test." *Id.* at 464 ¶ 2 n.2, 467 ¶ 21, 232 P.3d at 1246, 1249.

**¶52** In short, as of September 2012, no Arizona court had suggested that the continued validity of the unconscious clause was dubious. Yet the majority unpersuasively suggests that, under the state of the law at that time, the provisions of § 28-1321(C) "[were] such that a reasonable officer should have known that the statute was unconstitutional." *Supra* ¶ 28 (quoting *Krull*, 480 U.S. at 355).

**¶53** Contrary to the majority's reasoning, *supra* ¶¶ 24-27, *Schmerber v. California*, 384 U.S. 757 (1966), neither casts doubt on the pre-*McNeely* validity of § 28-1321(C) nor negates application of the good faith exception here. In its discussion of *Schmerber*, *supra* ¶¶ 24-25, the majority omits a significant portion of the Court's reasoning in finding that a warrantless blood draw from a DUI suspect in that case did not violate the Fourth Amendment:

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence[.]' We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Schmerber*, 384 U.S. at 770-71 (citation omitted). Given the similar circumstances of this case (with the additional fact here that the injured DUI suspect was transported out of state), the DPS officer likewise "might reasonably have believed that he was confronted with an emergency" that authorized the warrantless blood draw. *Id*.

¶**54** Tellingly, the pertinent Arizona cases interpreting and applying *Schmerber* do not support the majority's analysis and conclusion, but instead support application of the good faith exception. In *Campbell*, this Court rejected a Fourth Amendment challenge to Arizona's implied consent law (including the unconscious clause) "in light of the holding in *Schmerber*." 106 Ariz. at 545, 554, 479 P.2d at 688, 697. Later, in *Cocio*, we expounded in greater depth on our understanding of *Schmerber*:

> The United States Supreme Court in *Schmerber* held that a blood sample may be taken without a search warrant if it is taken in a medically approved manner and based on probable cause to believe the person is intoxicated. In such a situation exigent circumstances permit a warrantless seizure because, ". . . the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system."

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

147 Ariz. at 285-86, 709 P.2d at 1344-45 (quoting *Schmerber*, 384 U.S. at 770).

**¶55** To authorize a warrantless blood draw under the medical blood draw exception, A.R.S. § 28-1388(E) (former § 28-692(M)), *Cocio* required the presence of "exigent circumstances." 147 Ariz. at 286, 709 P.2d at 1345. But we concluded that "exigent circumstances existed" merely "because of the destructibility of the evidence." *Id.* (citing *Schmerber* for the proposition that "[t]he highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time"). Based on that physiological phenomenon alone, this Court thus recognized a per se exigency. Stated differently, to establish exigency, the State was not required to show that there was no time or opportunity to obtain a warrant. Again, that additional requirement, first imposed by *McNeely* and now incorrectly applied retroactively by the majority here, did not apply to this case. *See State v. Reyes*, 238 Ariz. 575, 578-79 ¶ 19, 364 P.3d 1134, 1137-38 (App. 2015) (noting that as of 2012, "Arizona courts had uniformly held that dissipation of alcohol in blood was in itself a sufficient exigent circumstance for purposes of the medical exception") (citing *Cocio* and other cases).

**¶56** The majority alternatively posits that the law on this point "was, at most, unsettled" in September 2012. *Supra* ¶ 28. Again, I disagree. Although *Cocio* did not address the unconscious clause, its finding of exigent circumstances based solely on the "highly evanescent nature of alcohol" in the blood and its rapid dissipation rate was not limited to the medical blood draw context. 147 Ariz. at 286, 709 P.2d at 1345. In that regard, consistent with *Cocio*, other courts also viewed *Schmerber* as broadly establishing a per se exigency based on the dissipation factor alone. *See State v. Shriner*, 751 N.W.2d 538, 547 & n.11 (Minn. 2008) (citing *Cocio* among other cases that interpreted *Schmerber* "as concluding that the naturally rapid dissipation of alcohol in the bloodstream creates an emergency that justifies a warrantless blood draw"); *State v. Blank*, 90 P.3d 156, 164 n.1 (Alaska 2004) (Matthew, J., dissenting) (same); *People v. Harrison*, 58 N.E.3d 623, 628 (Ill. Ct. App. 2016) (same); *see also People v. Harris*, 184 Cal.Rptr.3d 198, 205 (Cal. App. 2015) (noting that before *McNeely*, "California courts uniformly interpreted *Schmerber* as permitting forced blood draws based solely on probable cause of DUI because the natural dissipation of alcohol or drugs in the blood was itself an exigent circumstance").

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

¶57 The same exigency we recognized in *Cocio*, the natural dissipation of alcohol, would also be an exigency when, as here, a suspect is unconscious. And as we acknowledged in our recent opinion regarding the medical blood draw exception (A.R.S. § 28-1388(E)), the 2013 *McNeely* case requires us to disavow *Cocio*'s statement that "the natural dissipation of alcohol in the bloodstream itself establishes a per se exigency that authorizes a warrantless blood test," and to instead announce that "*in future cases, consistent with McNeely*, the state must establish exigency by showing that under circumstances specific to those cases, it was impractical to obtain a warrant." *State v. Nissley*, 241 Ariz. 327, 330-31 ¶¶ 11-12, 387 P.3d 1256, 1259-60 (2017) (emphasis added). Although I agree that, post-*McNeely*, "the unconscious clause can be constitutionally applied only when case-specific exigent circumstances prevent law enforcement officers from obtaining a warrant," *supra* ¶ 17, no such showing was required as of 2012.

¶58 The majority's reliance on two court of appeals cases is even more curious. *Supra* ¶¶ 31-32. The majority correctly observes that the court in *State v. Huffman* "applied *Schmerber*," *supra* ¶ 31, but disregards the *Huffman* court's statement that under *Schmerber* the natural dissipation of alcohol in blood justified officers in taking a blood sample from the unconscious DUI suspect pursuant to the implied consent statute's unconscious clause. 137 Ariz. 300, 303, 670 P.2d 405, 408 (App. 1983). The court thus affirmed the denial of Huffman's motion to suppress even absent any other evidence of exigency or any showing that the officer could not have obtained a warrant.

¶59 *State v. Flannigan*, on which the majority also relies, *supra* ¶ 32, is inapposite. 194 Ariz. 150, 978 P.2d 127 (App. 1998). That case involved a driver's methamphetamine (not alcohol) use and negligent-homicide conviction under Title 13, not DUI charges under Title 28; and *Flannigan* did not even "involve an application of the Arizona implied consent statute." *Id.* at 152-53 ¶ 13, 978 P.2d at 129-30. Nor did the case involve either the unconscious clause at issue here or the medical blood draw exception, which the court recognized "would have entitled the police to receive a sample of [the suspect's] blood regardless of his consent." *Id.* at 153 ¶ 14, 978 P.2d at 130. As our court of appeals recently and correctly observed, "*Flannigan* did not signal a shift away from *Cocio*" and "did not vitiate *Cocio*,

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

nor could it." *Reyes*, 238 Ariz. at 578 ¶ 18, 364 P.3d at 1137. To the extent *Flannigan*'s reading of *Schmerber* deviated from *Cocio*, which the *Flannigan* court did not even cite, *Cocio* controls. *Lind v. Superior Court*, 191 Ariz. 233, 237 ¶ 20, 954 P.2d 1058, 1062 (App. 1998) (recognizing that court of appeals is "bound by our supreme court's determinations").

**¶60** Because the seizure of a blood sample from Havatone while he was unconscious and receiving emergency medical treatment in another state was specifically authorized by a longstanding statute that no court had even questioned, much less ruled invalid, it matters not that Officer M.P.'s actions were taken pursuant to his DPS training or department policy. That training and policy were permissible under Arizona law, which Officer M.P. had no reason to question. Just as the officer had no reason to question the constitutionality of the statute based on then-existing law, he likewise had no reason to question the validity of the department's policy. Whether Officer M.P. "might reasonably have believed that he was confronted with an emergency" that authorized the warrantless blood draw under the statute, or under the department's policy, should not matter. *Schmerber*, 384 U.S. at 770; *see State v. Dennis*, 300 P.3d 81, 83 (Kan. 2013) (holding that "it was unnecessary for the officer to specifically articulate [a state statute] as authority for the [warrantless] search because application of a good-faith exception to the exclusionary rule is not governed by a subjective inquiry. The question is whether an objectively reasonable officer could rely on [the statute]."). The majority does not persuasively establish otherwise.

**¶61** "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" *Id.* at 404 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (emphasis and alteration in *Stuart*); *cf. Heien v. North Carolina*, 135 S. Ct. 530, 534, 539 (holding that an officer's mistake of law can give rise to the reasonable suspicion necessary to uphold a seizure under the Fourth Amendment and noting that in determining whether a mistake of fact or law was objectively reasonable, "[w]e do not examine the subjective understanding of the particular officer involved").

**¶62** Applying that standard here, contrary to the majority's

STATE v. HAVATONE
VICE CHIEF JUSTICE PELANDER, joined by JUSTICE BRUTINEL,
Dissented in part and Concurred in part

conclusion, Officer M.P's request for Nevada authorities to obtain a sample of Havatone's blood indeed was "objectively reasonable under Arizona law at the time of the draw." *Supra* ¶ 34. The officer certainly did not "deliberately, recklessly, or with gross negligence" violate Havatone's Fourth Amendment rights in requesting the blood draw. *Davis*, 346 U.S. at 240. Therefore, given the "nonculpable, innocent police conduct" here, *id.*, the good faith exception to the exclusionary rule applies. *See Valenzuela*, 239 Ariz. at 310 ¶ 35, 371 P.3d at 638 (finding good faith exception applied when officer "did not 'deliberately, recklessly, or with gross negligence' conduct the search in violation of the Fourth Amendment, but instead acted with 'an objectively reasonable good-faith belief' that the admonition was lawful") (quoting *Davis*, 131 S. Ct. at 2427-28); *Reyes*, 238 Ariz. at 579 ¶ 19, 364 P.3d at 1138 (finding good faith exception applied, pre-*McNeely*, when officer reasonably relied "on the evanescent nature of alcohol in [the DUI suspect's] blood in requesting [in 2012] the blood sample with no warrant"); *see also State v. Edwards*, 853 N.W.2d 246, 254 ¶ 19 (S.D. 2014) (finding good faith exception applied to officer's warrantless, pre-*McNeely* blood draw in 2013 when state's case law had held "that the dissipation of alcohol in blood was a per se exigent circumstance sufficient by itself to justify conducting a blood test without a warrant"); *State v. Meitler*, 347 P.3d 670, 676 (Kan. App. 2015) (applying good faith exception when officer obtained warrantless blood draw from a hospitalized, unconscious DUI suspect in 2012 based on state's implied consent law later declared unconstitutional).

¶**63** Through its revisionist reinterpretation of prior Arizona cases, the majority imposes an unrealistic and unreasonable expectation on police officers to divine, based on subsequent case law, that a presumptively valid state statute does not actually allow or mean what it says. But law enforcement officers are not legal technicians and should not be expected to anticipate or predict a future change in our case law. Exclusion of the BAC evidence here "does not result in appreciable deterrence" and thus "is unwarranted." *Arizona v. Evans*, 514 U.S. 1, 11 (1995) (internal quotation marks omitted). Under these circumstances, depriving the prosecution of that evidence necessarily "suppress[es] the truth" and risks "set[ting] the criminal loose in the community without punishment." *Davis*, 564 U.S. at 237 (citation omitted).